Dorothy I. **BRAND**, Appellant,

v.

**MONUMENTAL LIFE INSURANCE COMPANY, Appellee.**

No. 381S57.

Supreme Court of Indiana.

March 4, 1981.

Rehearing Denied May 19, 1981.

Chalmer Schlosser, Jr., William L. Schlosser, Schlosser, White & Schlosser, Indianapolis, for appellant.

John R. Carr, III, Stephan R. Buschmann, Buschmann, Carr & Meyer, Indianapolis, for appellee.

William M. Evans, Bose McKinney & Evans, Indianapolis, for amicus curiae.

## ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Fourth District Court of Appeals. Appellant Dorothy Brand was plaintiff below. She was the wife of Bruce Brand, the insured, and brought the action for the $10,000 (ten thousand dollar) proceeds of a life insurance policy issued by appellee and defendant below, Monumental Life Insurance Company. Brand received an adverse judgment after a trial to the court and appealed that judgment, alleging that it was contrary to law and the evi-

dence. It was Brand's contention that Monumental should have been estopped from asserting a forfeiture of policy benefits for non-payment of monthly premiums. This contention was based on Monumental's admitted practice of accepting premiums paid within sixty days after the end of a thirty-one (31) day grace period provided the insured was alive and apparently in good health. Brand tendered three monthly payments totaling $48.87, within the sixty-day period, but after the death of the insured, Bruce Brand. Monumental refused to accept the tender of payments and contended its actions were justified in that the condition for the extension, that the insured be alive and apparently in good health, was not met because Bruce Brand was not alive at the time of the tender.

On appeal, Brand was seeking to reverse a negative judgment claiming it to be contrary to law and the evidence. The Court of Appeals reversed the trial court and found that Brand was entitled to judgment in the amount of $10,000 with interest. Brand v. Monumental Life Ins. Co., (1979) Ind.App., 396 N.E.2d 417. The Court of Appeals acknowledged in its opinion that the standard for determining when a negative judgment will be overturned is: "A finding, which is, in effect, a negative finding against the plaintiff, may be set aside only if the evidence is uncontradicted and will support no reasonable inference in favor of the finding." Taxpayers Lobby of Indiana, Inc. v. Orr, (1974) 262 Ind. 92, 311 N.E.2d 814, 819. In determining whether a judgment is contrary to law we do not weigh the facts nor determine the credibility of the witnesses. This is the duty of the trier of fact. Where there is a conflict in the evidence, the trier of fact in the court below must resolve that conflict. Where the party having the burden receives a negative judgment by the trier of fact, we will not disturb that judgment if there is any evidence to support it or a reasonable inference to be drawn from any evidence in favor of it. Umbreit v. Chester B. Stem, Inc. (1978) Ind.App., 373 N.E.2d 1116. We find that the Court of Appeals violated the

above standard in reversing the judgment of the trial court here, and further find that the Court of Appeals improperly applied the law to the facts presented to the trial court in making the finding that the judgment of the trial court was contrary to law. We therefore grant transfer, vacate the opinion of the Court of Appeals and affirm the trial court.

The Court of Appeals relied heavily on the stipulations entered into by both parties before trial. Those stipulations were as follows:

1. The premium payment book with attached receipt contains a true record of the dates of collection of premiums on the insurance policy.

. . . . .

5. Defendant's agents visited the home of Bruce Brand and Dorothy Brand on or about July 9, 1975, for the purpose of asking Bruce Brand and Dorothy Brand to pay the amount of premiums then overdue.

6. The amount of overdue premiums was at that time $48.87, for the months of May, June and July of 1975.

7. Defendant's agents, after meeting with Bruce Brand and Dorothy Brand, attempted to contact Bruce Brand's mother, Margaret Smith, for the purpose of asking her to pay the amount of said overdue premiums on behalf of Bruce Brand and Dorothy Brand.

8. Bruce Brand died on July 14, 1975.

9. Dorothy Brand tendered the amount of overdue premiums to defendant's agents on or about July 22, 1975.

10. Defendant's agents refused said tender.

11. Defendant has a practice or procedure whereby premium payments are accepted within 60 days of the expiration of the applicable grace period, provided defendant's agents receive at least verbal assurance that the insured is alive and apparently in good health.

12. Dorothy Brand had actual knowledge of defendant's practice or procedure set forth in stipulation No. 11.

13. The premium payment tendered by Dorothy Brand on or about July 22, 1975, would have been accepted by defendant's agents on behalf of defendant, if Bruce Brand had been alive and apparently well at that time.

There was other evidence before the trial court, in addition to these stipulations, that is pertinent to our opinion here.

The policy of insurance issued by Monumental was a basic life policy covering the deceased, Bruce L. Brand, and plaintiff-appellant, Dorothy I. Brand. The policy provided for a premium of $16.09 per month, payable in advance on the first day of its interval of premium payment, which date for the first premium is the date of issue, March 1, 1974. Bruce Brand was 21 years old at the date of issuance and died at the age of 22 years, on July 14, 1975. The policy further provided that any premium, other than the first, not paid when due may be paid within the grace period of thirty-one (31) days after its due date provided premiums have been paid to that date. Under paragraph IV of the policy, Monumental had the option of reinstating the policy after a lapse, after having received evidence of insurability satisfactory to the Company plus payment of overdue premiums and interest. Paragraph XII of the policy provides that the policy will lapse if a premium has not been paid when the grace period of thirty-one days ends. If the policy has no surrender value at the end of the grace period, the insurance will cease to be in force. Paragraph XII also sets out the method of calculation of the extended term insurance available, if any, at the time of lapse.

The policy issued to Brand here, had no cash value when the premiums were due and unpaid. This policy was issued on March 1, 1974, and the first payment was made on or about April 15, 1974. Thereafter, all payments were made when due or

before the expiration of the grace period through January, 1975. The payment due February, 1975, was paid March 10, 1975, and the March and April payments due March 1, and April 1, respectively, were paid on April 16, 1975. Thereafter, no further payments were made or tendered until July 22, 1975, after the death of the insured. There was evidence that when the February 1975, payment was made on March 10, 1975, after the thirty-one day grace period had passed, that a representative of Monumental first inquired by phone and determined that Bruce Brand was alive and apparently in good health, before accepting said payment. There was evidence that the March and April payments which were paid on April 16, 1975, were not accepted by agents of Monumental until they had seen Bruce Brand in person and had determined that he was in good health.

Stipulation 12 of the stipulations of the parties, *supra*, states that Dorothy Brand had actual knowledge of Monumental's practice of accepting late payments as set out in Stipulation 11, *supra*, providing their agents received at least verbal assurance that the insured is alive and apparently in good health. There was evidence that Bruce Brand also had knowledge that he had no coverage and obtained that knowledge in the presence of his wife. There was testimony by witnesses Millett and Kreutzer, representatives of Monumental, that they were at the Brand home two days before the death of Bruce Brand, attempting to collect the premiums so that the policy might be reinstated. Their testimony was that they told Bruce Brand that his policy had lapsed and he no longer had coverage, but, if he paid the overdue premiums, his policy could be in effect again and his coverage would be continued. Their testimony was that Bruce Brand responded that he did not want the insurance and did not intend to continue it. He told them he intended to live forever and would not need insurance. He further said he did not have the money to pay it and was not going to pay it. There was a discussion about having Bruce's parents pay the premium, but Bruce told them he did not want them to

bother his parents as he did not want the policy. There was evidence that Bruce's mother or father had paid one of the payments in February, 1975. There is conflict in this evidence. Dorothy Brand testified that although she was not present during all of the conversation, she did hear one of the agents for Monumental tell Bruce Brand that his policy was still in effect but, if he did not pay the premium soon, it would be cancelled. There was also evidence that after the thirty-one day grace period the policy was carried as lapsed and lapse notices were sent to the parties. Witnesses for Monumental testified that notices had been sent to the Brands telling them that their policy had lapsed. Dorothy Brand testified she never received any of these notices. The Company policy also was that within a sixty-day period following the due date of a premium payment, they would accept a late payment without interest on verification from an agent that such agent had determined that the insured was alive and apparently in good health. There was a special form filed with the agent when he sent in the premium notice under these circumstances in which he indicated he had made that determination. It was further provided in the policy that a lapsed policy could be reinstated for up to five years, but after the sixty-day period, insurability would have to be verified by medical examination and all premiums, plus interest, would have to be paid before reinstatement.

Our burden, and that of the Court of Appeals, in reviewing this case on an appellate level, is to determine whether there was evidence before the trial court to support his judgment that Monumental was justified in asserting a forfeiture under the facts and circumstances here.

This Court addressed the question of forfeitures of insurance proceeds in the context of late payments and waiver of their timeliness in *Oddfellows Mutual Aid Association of Indiana v. Sweetser* (1889) 117 Ind. 97, 19 N.E. 722. In that case the insurance agreement provided that the premium payments could be made within ten days after

the due date, which fell on the 25th day of each month. In actual practice, payments were accepted up to 60 (sixty) days after the due date. On November 24, the insurance company accepted the September 25th payment from the insured. At that time the insured was informed his October 25th payment was late and his November payment would be due the next day. He died on December 15, without having paid the October and November payments. This Court found in *Sweetser* that the course of dealing had induced the insured to believe that payment might be made within sixty days after the receipt of notice, even though the notice stated otherwise. No formal action had been taken by Oddfellows to cancel the certificates or to declare a forfeiture, nor was the insured informed when the payment last made by him was received by the Company that the previous extensions for time payment would no longer be continued. "It is abundantly settled that an insurance company will be estopped to insist upon a forfeiture, if, by an agreement, either expressed or implied by the course of its conduct, it leads the insured honestly to believe that the premiums or assessments will be received after the appointed day. *Id.* at 100, 19 N.E. at 723. "It is not necessary that there should have been an agreement, formally expressed in words, to extend the time. If the officers of the association manifested by their acts, declarations or conduct, their assent to an extension of time, and their intention not to insist upon a forfeiture, and the insured honestly and in good faith relied and acted upon their conduct or declarations, the association is now estopped to say that there was no agreement." *Id.* at 104, 19 N.E. at 725. The court then found that whether or not under all the circumstances the conduct of the association was such as to put the insured off his guard and to raise an implied agreement to continue in the same course of dealing was a question for the jury after taking into consideration all of the circumstances including those circumstances of the conduct of the association in accepting late payments for two years, of seeing the assured at his office and not

advising him of the change of policy, and of receiving assessments that were then nearly sixty days past due.

In *Michigan Mutual Life Insurance Co. v. Custer*, (1891) 128 Ind. 25, 27 N.E. 124, the insurance company was estopped from asserting a forfeiture for overdue premium payments because of its practice of extending the time for the payment. Instead of demanding cash payment on Custer's June 3, 1884 annual premium, the Company accepted a note due January 3, 1885, and later extended the maturity date of the note to June 3, 1885. On May 9, 1885, Custer died. The trial court entered judgment for Custer and this Court affirmed the judgment, stating: "According to the interpretation claimed by appellant the arrangement to extend the time for payment of the note, so far as his right (sic) under the policy were concerned, would have left him precisely in the condition he would have been without an extension. It would enable the company, under a show of leniency, to receive all the benefits of the extension, and yet remain in a condition to repudiate all liability during the same time. It would enable the company, whatever happened, to 'read the premium and escape the risk.' *Kentucky Mutual Insurance Co. v. Jinks*, 5 Ind. 96." *Id.*, at 30–31, 27 N.E. at 126. *See also West v. National Casualty Co.*, (1916) 61 Ind.App. 479, 112 N.E. 115. In these cases there was a practice of the company accepting late payments beyond the grace period without any conditions being put on that acceptance and without any notice to the insured that certain conditions must be met with reference to insurability before the insurance could be reinstated. In all of those cases it was determined that by a practice of accepting late payments, the insured had been led to believe that payments within a period after the regular grace period were acceptable to the company, and the company was therefore estopped to declare a forfeiture during that extended period. As a matter of fact, in *Michigan Mutual Life Insurance Co. v. Custer, supra*, the premiums had, in fact, been paid by a note even though the note was unpaid. The company did have an

action on the note and accepted it as payment, thereby leading the insured into a determination that he had coverage.

■ In the cause before us there was evidence before the trial court that for a period of sixty days after the expiration of the thirty-one day grace period, the company would accept overdue payments to bring the policy to coverage again, if it were determined that the insured was alive and in apparent good health at the time of the tendering of the premium payment. There was evidence before the trial court that the Brands knew of this practice. The parties stipulated in Stipulation 11 that this was the practice of the company, and stipulated in Stipulation 12 that Dorothy Brand had actual knowledge of this practice. In Stipulation 13 it was agreed that the payments would have been accepted if Bruce Brand had, at that time, been alive and apparently well. There was evidence before the trial court that Bruce Brand also knew these facts. The trial court had all of this evidence before it to weigh. It had the right and the duty to resolve the conflicts in the evidence and to believe the testimony it deemed the most credible. There was evidence from which the trial court could reasonably find that Monumental was not estopped from asserting a forfeiture here. There was evidence that supported the determination that the practice of the company in accepting overdue payments after the thirty-one day grace period and for an additional period of sixty days was done only on condition that the insured was in apparent good health and alive, and that these conditions were well known to the insured, Brand. The judgment of the trial court was not contrary to law since it was not inconsistent with *Sweetser, supra, Michigan Mutual Life, supra,* or *West v. National Casualty Co., supra.* There was ample evidence before the trial court to support its judgment, and we will not disturb that judgment on appeal.

The trial court is affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents without opinion.