**WABASH FORD TRUCK SALES, INC., Appellant,**

**v.**

**FORD MOTOR COMPANY, Appellee.**

**No. 1–384A79.**

Court of Appeals of Indiana, First District.

Dec. 19, 1984.

Rehearing Denied Jan. 31, 1985.

tions. *Cunningham v. State,* (1982) Ind.App., 438 N.E.2d 308; *Warenr v. State,* (1980) Ind. App., 406 N.E.2d 971.

Phillip A. Terry, McHale, Cook & Welch, P.C., Indianapolis, for appellant.

James D. Witchger, Rocap, Rocap, Reese & Young, Indianapolis, for appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Wabash Ford Truck Sales (Wabash) appeals the grant of Ford Motor Company's (Ford) Ind. Rules of Procedure, Trial Rule 12(C) motion for judgment on the pleadings as to Wabash's cross-claim for attorney fees and other costs. The cross-claim was based on an indemnity agreement entered into by both parties.

We reverse and remand for an ascertainment of damages.

## STATEMENT OF THE FACTS

In 1973, the State of Indiana announced that it would accept bids for 34 new snow plows. Wabash, with the knowledge of Ford, bid on the State's order and was awarded the contract. Ford manufactured the trucks and delivered them to Wabash. Wabash then delivered them to Fruehauf Distributing Company for placement of modifications and additions specified by the State which were needed to make the trucks, as delivered by Ford, into snow plows. The trucks were then delivered to the State.

On February 8, 1975, one of the trucks caught fire while plowing snow. It was damaged extensively.

The State brought suit against Wabash and Ford, alleging in its complaint that first, the fire which destroyed the vehicle was caused by faulty and negligent construction of said vehicle; and second, the vehicle was unsafe and the sale of the vehicle breached all warranties, both written and implied. At trial, the State presented the testimony of two experts who had conflicting theories on the cause of the fire. One expert attributed the fire to the Ford-built carburetor; the other stated that the fire had started as a result of a short in an electrical wire. The latter expert was unable to determine whether the defective wire was the original equipment of Ford or wire added by Fruehauf.

Shortly after the State filed its claim against Wabash and Ford, Wabash filed a

cross-claim against Ford based on a contract, effective May 15, 1978, which provided for cross-indemnities. Wabash also brought in Fruehauf as a third-party defendant. As to Ford's responsibilities to indemnify Wabash, the agreement provided in relevant part:

"INDEMNIFICATION BY THE COMPANY. The Company [Ford] shall defend, indemnify, hold harmless and protect the Dealer [Wabash] from any losses, damages or expense, including costs and attorney's fees, resulting from or related to lawsuits, complaints or claims commenced against the Dealer by third parties concerning:

(1) Property damage to a COMPANY PRODUCT or FOREIGN PRODUCT (as applicable) or bodily injury or property damage arising out of an occurrence caused solely by a 'production defect' in that product (i.e., due to defective materials or workmanship utilized or performed at the factory), except for any 'production defect' in tires and diesel engines made by others, provided, however, that the 'production defect' could not have been discovered by the Dealer in the reasonable pre-delivery inspection of the VEHICLE, FOREIGN VEHICLE, TRUCK or HEAVY DUTY TRUCK (as applicable) as recommended by the Company."

At the close of the State's case, the trial court granted Wabash's motion for judgment on the evidence pursuant to Ind.Rules of Procedure, Trial Rule 50. Ford joined in the motion. The trial court held that since the State had ordered modifications in the truck, it had invited a specific warranty and therefore waived Ford's inspection and approval. Further, the State had not adequately proved the specific amount of damages.

At this time, Ford made a T.R. 12(C) motion for judgment on the pleadings in response to Wabash's cross-claim. The trial court granted Ford's T.R. 12(C) motion at the same time it granted the appellees' motion for judgment on the evidence. Although the court's reasoning is somewhat difficult to ascertain, it explained its ruling by stating in part "it's going to be granted on the theory that solely means solely".

## ISSUES

Wabash raises the following issues:

I. Is the trial court's judgment contrary to law in that the trial court improperly construed the indemnity contract between Ford and Wabash to require Wabash, as a precondition to Ford's duty to defend, to establish that the property damage to the Ford truck, of which the plaintiff-below complained, was caused solely by a production defect?

II. Did the trial court deny Wabash a fair trial by granting judgment against Wabash on its cross-claim against Ford prior to the completion of Wabash's case and before Wabash was given an opportunity to prove that the damage was caused solely by a production defect?

In light of our reversal on the basis of the first issue, it is unnecessary to discuss the second one.

## DISCUSSION AND DECISION

The State filed its complaint, wherein it alleged that the vehicle was negligently constructed and that all warranties, express or implied, were breached. We are of the opinion that underlying the warranty count is the implicit allegation of a production defect, since a breach of warranty is necessarily derived from such a defect. The State presented evidence that the fire was possibly caused by either the Ford-built carburetor or defective wiring; however, in the record there is evidence of extensive modification of the vehicle for mounting snowplows. On the basis of these modifications, as well as failure of proof of damages, the trial court entered judgment against the State. As for the ruling on Ford's T.R. 12(C) motion against Wabash, neither the court's reasoning nor Ford's argument in support of the motion is particularly clear. However, it appears

the trial court believed that because evidence indicating a concurrent cause of the damage, i.e., extensive modification of the truck, was introduced during the trial, the damage was not caused *solely* by a production defect. Therefore Ford was released from its obligation to indemnify Wabash.

In defense of the judgment, Ford argues for its part that since damage was caused by negligent alteration of the truck and not a production defect, the lawsuit did not relate to either Ford or Ford's product and arose out of the concurrent or sole negligence of Wabash or Fruehauf. Thus, it concludes, the indemnity agreement is inapplicable to this case.

Wabash, after engaging in a hypertechnical discussion of the rules of construction, essentially argues, as we perceive it, that the agreement requires Ford to indemnify it when the plaintiff's complaint is based on, and the trial proceeds on, the theory that the damage was caused by a production defect. It argues that Ford must defend such a suit and indemnify Wabash for attorney fees and expenses regardless of the outcome. Wabash need not prove that the damage was caused by a production defect in order to recover; it is the nature of the plaintiff's case which is the determinative factor.

The contract providing for cross-indemnities was drafted by Ford. It is a cardinal rule of construction that a contract is construed most strongly against the party that prepares it. *Colonial Discount Corp. v. Berkhardt*, (1984) Ind.App., 435 N.E.2d 65.

Furthermore, we are cautioned by the admonition that courts can only enforce the terms of the contract as agreed upon by the parties and have no authority to make a new contract. *Workman v. Douglas*, (1981) Ind.App., 419 N.E.2d 1340. "The meaning of a contract is to be determined from an examination of all its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone." *Jones v. City of Logansport*, (1982) Ind.App., 436 N.E.2d 1138, 1143.

We agree with Wabash. Even though the State lost its suit, it does not alter the fact that it was filed and tried by the State on the theory of a production defect and the resultant breach of warranty. The indemnity contract provides that Ford "shall ... hold harmless ... the dealer ... from any losses ... including attorney fees *resulting from lawsuits* ... concerning property damage arising out of an occurrence caused solely by a production defect." The language requires neither a successful lawsuit on the part of the plaintiff nor Wabash's proof of a production defect as a prerequisite to recovery of attorney fees and expenses. The agreement merely requires Wabash to demonstrate that it was sued and defended against a case filed and tried on the theory of a production defect. Our conclusion stands even in the case of a frivolous lawsuit, for Wabash cannot choose its plaintiffs or control the theories of the plaintiff's cause of action. Neither Wabash nor Fruehauf was sued for its own alleged negligence; nowhere does the complaint address negligent *modification* of the truck.

We reiterate that ambiguities are to be resolved against the draftsman of the contract, Ford. Should Ford desire limiting language in the indemnity contract, it should so draft it accordingly.

In light of the above reasoning, we reverse and remand the case to the trial court for a trial on the damages to which Wabash is entitled from Ford.

Judgment reversed and remanded.

ROBERTSON and RATLIFF, JJ., concur.