**Billy Ray SALMON, d/b/a First Realty Co., Plaintiff–Appellant,**

v.

**Mary I. PEREZ,**

and

**Hills O'Brown Realty, Defendant–Appellees.**

No. 03A01–8810–CV–331.

Court of Appeals of Indiana, First District.

Oct. 19, 1989.

Thomas M. Barr, Nashville, for plaintiff-appellant.

James T. Roberts, Nashville, for Mary I. Perez.

David T. Woods, Nashville, for Hills O'Brown Realty.

BAKER, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Billy Ray Salmon, d/b/a First Realty Co. (Salmon), appeals from the denial of his claims for a brokerage fee and incidental damages arising from the aborted sale of real estate pursuant to a purchase agreement with Mary I. Perez (Perez).

We affirm.

## STATEMENT OF THE FACTS

Salmon, a licensed real estate broker, was the listing agent for real estate owned by the estate of Judith E. Allen (the property). Under the terms of the listing contract, Salmon was to receive a commission upon procuring a buyer for the property.

On April 7, 1986, Perez made a written offer to purchase the property and tendered a $1,000 deposit as earnest money. The purchase agreement was drawn up by Hills O'Brown Realty (Hills O'Brown), Perez's representative in the transaction. The purchase agreement contained the following provisions regarding conveyance and evidence of title:

> At closing, the Property shall be conveyed to Purchaser by Warranty Deed in the same condition as it is now, ordinary wear and tear excepted, subject to all covenants, easements, restrictions and rights of way of record and to applicable health and zoning laws, but free and clear of all other liens and encumbrances except as stated herein. In support of a merchantable title, Purchaser shall be furnished at Seller's expense prior to Closing an Owner's insurance binder in the amount of the purchase price. Should additional time be needed to correct title defects, reasonable extensions of time shall be given.

*Record* at 270. Because of Perez's desire to obtain an out-of-state mortgage loan, the

closing date was delayed. Accordingly, Perez paid an additional earnest money deposit of $1,000 to keep the bargain open during the delay.

Upon receiving a loan commitment for Perez's mortgage, Salmon ordered the title insurance as required by the purchase agreement. On August 11, 1986, one day before the scheduled closing, Salmon received the title commitment. A copy of the title commitment was delivered to Hills O'Brown at which time an oil and gas lease was discovered to exist on the property. None of the parties directly involved in the closing had any knowledge of the oil and gas lease prior to August 11, 1986.

Perez went to Hills O'Brown on the morning of August 12, 1986. The closing was scheduled to take place that afternoon. Perez and the owner of Hills O'Brown, Frank Russo (Russo), discussed the existence of the oil and gas lease. Russo explained to Perez that the lease could be removed at the seller's expense. Russo proposed that $150 from the seller's share of the purchase price be set aside in escrow to cover the cost of removing the lease. Salmon agreed to this arrangement. Perez, however, refused the escrow arrangement. Rather, she elected to terminate the deal.

On August 14, 1986, Perez's attorney requested Salmon return the earnest money deposit. The earnest money was not returned to Perez, but was divided between Salmon and the heirs of Judith Allen as provided in the listing contract. Salmon's share totaled $500. He brought this action seeking the remainder of his commission, reimbursement for expenses incurred in relisting the property, and interest. The trial court found that Salmon was not entitled to his brokerage fee because the property did not have merchantable title at the time of closing due to the existence of the oil and gas lease. The court also stated that "[a]lthough the defendant had an obligation to provide a reasonable time for the correction of the title defect, no evidence was presented to show that the plaintiff made nor the vendor made any attempt to correct the defect." *Record* at 217. Salmon now appeals.

## ISSUES

Five issues are presented by this appeal:

I. Whether there was sufficient evidence to conclude that the oil and gas lease amounted to an encumbrance rendering title to the property unmerchantable.

II. Whether the trial court erred in determining that Salmon was not entitled to his brokerage fee for failure to correct the defect in the property's title.

III. Whether the trial court erred in denying the admissibility of evidence concerning the procedures for removing oil and gas leases.

IV. Whether the trial court erred in denying the admissibility of Salmon's evidence concerning advertising expenses.

V. Whether Perez is entitled to attorney fees.

## DISCUSSION AND DECISION

ISSUE I: *Marketability of Title*

Salmon appeals from a negative judgment. To be successful, he must establish that the judgment is contrary to law. *Sherk v. Indiana Waste Systems, Inc.* (1986), Ind.App., 495 N.E.2d 815, *trans. denied.* This court will set aside a negative judgment as contrary to law only when the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one result and the trial court has reached a different one. *Charles F. Broughton, D.M.D., P.C. v. Riehle* (1987), Ind.App., 512 N.E.2d 1133. We will not reweigh the evidence or judge the credibility of the witnesses. *Maddox v. Wright* (1986), Ind.App., 489 N.E.2d 133. Where a party bearing the burden of proof receives a negative judgment, it will not be disturbed as long as any evidence or reasonable inferences arising therefrom support the judgment. *Brand v. Monumental Life Ins. Co.* (1981), 275 Ind. 308, 417 N.E.2d 297. Any conflicts in the evidence must be

resolved by the trier of fact. *Id.* We will affirm the trial court if its judgment is sustainable on any theory consistent with the evidence. *Garlinger v. Garlinger* (1986), Ind.App., 501 N.E.2d 1138.

Salmon asserts that the oil and gas lease did not constitute an encumbrance rendering title to the property unmerchantable. Salmon points out that the lease was never developed, and rents were never paid under the lease. Accordingly, he argues, the lease was legally null and void at the time of closing. To support his assertion, Salmon cites *Heeter v. Hardy* (1948), 118 Ind. App. 256, 76 N.E.2d 590, *trans. denied.*

In *Heeter,* both parties to an oil and gas lease sought to have their titles quieted to certain real estate. Prior to filing his quiet title action, the lessor and owner of the subject property followed the procedures set forth in the predecessor to the present IND.CODE 32–5–8–1 to remove the oil and gas lease from the property. He filed an affidavit with the county recorder claiming the lease had not been operated and oil or gas had not been produced for more than one year. Accordingly, the county recorder entered a release of the oil and gas lease on the county records. The lessee, however, also followed the statute and subsequently filed an affidavit claiming the lessor's affidavit was fraudulent. The county recorder cancelled the previously entered release.

In a quiet title action, the trial court ruled in favor of the owner and this court reversed. This court held that even though the lease had been abandoned, it existed as a matter of record because the owner failed to comply with the statutory requirement of appealing the action of the recorder in cancelling the release of the lease. The oil and gas lease, therefore, existed as a cloud on the owner's title.

Contrary to Salmon's assertion, *Heeter* supports rather than contradicts the trial court's finding in the present case. Salmon correctly points out that this court stated, "[t]he lease having been abandoned was null and void." *Id.,* 118 Ind.App. at 265, 76 N.E.2d at 594. This statement, however, refers to the lessee's ability to recover un-

der his cross-complaint. Because he had abandoned the lease, the lessee "was not entitled to have his title quieted to any interest he acquired by the lease against whatever interest [the owner] had in this real estate." *Id.* The lessee's failure to recover does not change the fact that the owner was required by statute to take affirmative steps to remove the oil and gas lease from the record of title.

■ An oil and gas lease is not automatically removed from real estate once a one-year period of inactivity has occurred. The relevant statute provides in pertinent part:

All leases for oil and gas heretofore and hereafter entered of record in this state shall *become* null and void after a period of one (1) year has elapsed since the last payment of rentals thereon as stipulated for in such lease or contract, or since operation for oil or gas has ceased, both by the nonproduction of oil or gas and the nondevelopment of said lease, *and* upon the written request of the owner of such lands, accompanied with the affidavit of such owner, stating that no rentals have been paid to or received by such owner or any person, bank or corporation in his behalf for a period of one (1) year, the recorder of the county in which such real estate is situated shall certify upon the face of such record that such leases and contracts are invalid and void by reason of nonpayment of rentals and is thereby canceled of record, ...

IND.CODE 32–5–8–1 (emphasis added). The statute requires a one-year period of inactivity *and* a written request of the property owner before an oil and gas lease will *become* null and void. While there was a one-year period of inactivity under the lease in the case before us, the owner did not make a written request for cancellation prior to closing. Accordingly, the trial court properly found an oil and gas lease existed on the property at the time of closing.

The question then becomes whether the existence of the oil and gas lease rendered the title to the property unmerchantable. Salmon argues that because the existence

of the lease did not diminish the value of the property, the title was not rendered unmerchantable. Salmon misconstrues the concept of merchantability.

The term "merchantable title" is often used synonymously with the term "marketable title." 92 C.J.S. *Vendor & Purchaser* § 191 (1955). Although recent case law on the subject is sparse, the prevailing view is "that a marketable title is one which is free from reasonable doubt and will not expose the party who holds it to the hazards of litigation." *Staley v. Stephens* (1980), Ind. App., 404 N.E.2d 633, *trans. denied.*

Oil and gas leases give the lessee a secondary, non-possessory interest in the real estate. These leases are often abandoned and lay dormant for many years. This dormancy creates uncertainty as to whether the lease, which exists as of record, has served the purposes of the lessee. If steps are not taken to remove the lease from the books, the owner's title is impaired because of the possibility that the lessee may later return to rejuvenate his interest under the lease. The reappearance of a lessee exposes the owner to the possibility of litigation. Although the passage of time may indicate such action is unlikely, "titles containing such outstanding interests are not usually regarded as marketable." P. BASYE, CLEARING LAND TITLES, at 144 (1970). In response to this problem, the Indiana legislature has passed IND.CODE 32-5-8-1. Under this statute, owners are able to clear their title based on their affidavit substantiating the fact that the lease has been abandoned for more than one year.

The ease in which abandoned oil and gas leases can be removed from land titles supports the underlying policy of the Indiana Marketable Title Act. IND.CODE 32-1-5-1 to 32-1-5-10. The purpose of the Act is to simplify and facilitate land title transactions by allowing people to rely on a record chain of title. IND.CODE 32-1-5-10. Marketable record titles, however, are subject to the rights of lessees. The Act will not "be applied to bar any lessee or his successor of his rights in and to any lease[.]" IND.CODE 32-1-5-6. Accordingly, oil and gas leases, which render land titles unmarketable, are easily removed in order to provide clear marketable record titles that can be relied on in land transactions.

In the case at bar, an oil and gas lease, having apparently been abandoned, existed on the subject property rendering its title unmarketable. Salmon argues, and we agree, that removing the lease is a simple procedure. Until the lease is removed, however, the title remains unmarketable. We recognize that Salmon was in fact successful in removing the lease by filing an affidavit signed by the heirs of the estate stating that the lease had not been developed and rents had not been paid for a period exceeding one year. The affidavit was not filed, however, until fifteen months after the scheduled closing. Accordingly, the title at the time of closing was defective. Perez bargained for good title and was not bound to take the doubtful title, even though it was later cleared. *Staley, supra.* We agree with the trial court that the title was rendered unmerchantable due to the existence of the oil and gas lease.

ISSUE II: *Curing Title Defect*

Salmon further contends that even if the oil and gas lease was a defect in the title, Perez was bound by the terms of the purchase agreement to give him a reasonable time to cure the defect. Salmon claims that Perez repudiated the contract by refusing to accept an escrow arrangement, calling off the deal, and demanding the return of her earnest money without first allowing him a reasonable time to cure the defect. Salmon argues Perez's actions made performance of his obligations under the contract impossible thereby relieving him of his contractual duty to correct the defect. Salmon misconstrues the terms of the agreement.

The trial court denied Salmon recovery because he failed to present any evidence that he made any attempt to correct the defect at closing. We agree with the trial court's interpretation of the applicable contract provision. The provision gave the seller, represented by Salmon, an option to

postpone the closing for a reasonable period of time to correct the title defect. Accordingly, Salmon, upon discovering the defect, had the option to postpone the closing and correct the defect. This he did not do. Instead, he attempted to proceed to closing with the defective title. Perez was not bound to accept the defective title and allow additional time. Absent any evidence to indicate Salmon requested a postponement to correct the defect, Perez was relieved of any obligation under the contract. The trial court correctly found she was entitled to the return of her earnest money.

ISSUE III: *Admissibility of Affidavit*

█ Salmon argues that if the lease constitutes an encumbrance on the title, then the ease in which such leases can be removed becomes a central issue. Accordingly, he argues, he should have been allowed to submit independent evidence from an attorney experienced in the procedures for removing oil and gas leases. Salmon made an offer to prove that based on the attorney's prior experience with the similar leases involving the same lessee, the attorney could have effectuated the removal of the lease within 30 days from the date of closing. Upon sustaining Perez's objection that the testimony was irrelevant and speculative, the trial court refused to admit the testimony. Salmon assigns this as error.

Salmon correctly points out that the standard for evaluating the relevancy of evidence is whether the offered evidence has a logical tendency to prove a material fact. *Favourite v. County of Steuben Bd. of Zoning Appeals* (1987), Ind.App., 515 N.E.2d 560, *trans. denied.* In reviewing the trial court's action, we will reverse for abuse of discretion only if its conclusion was clearly against the logic and effect of the facts before it. *CIGNA–INA/Aetna v. Hagerman–Shambaugh* (1985), Ind.App., 473 N.E.2d 1033, *trans. denied.* The facts before the trial court in this case concerned title to property involved in a real estate deal in which Salmon and Perez were participants. The testimony offered in the attorney's affidavit did not concern the subject property. Rather, it concerned his success in removing leases on property not the subject of the Perez real estate deal. What the attorney might have been able to do does not change the fact that the title was defective at the time of closing. The trial court did not abuse its discretion in excluding the attorney's testimony as irrelevant and speculative.

ISSUE IV: *Admissibility of Advertising Expenses*

Salmon claims the trial court erred in excluding testimony regarding advertising expenses he incurred in relisting the property following the aborted closing. In his brief, Salmon asserts that as the non-breaching party, he is entitled to recover these expenses from the breaching party. Because we have already established that Perez was not the breaching party, we need not explore this issue.

ISSUE V: *Attorney Fees*

█ Perez asserts for the first time on appeal that she is entitled to attorney fees under IND.CODE 34-1-32-1. Perez contends this appeal is inappropriate because: (1) she is an unwilling litigant; (2) the amount of the judgment was relatively small ($2,000); and (3) Salmon's legal arguments were generally inadequate. Accordingly, she argues, this appeal is frivolous, groundless and unreasonable.

We note first that the provisions of IND. CODE 34-1-32-1 apply to the awarding of fees by the trial court, not an appellate court. Appellate courts award attorney fees by instituting damages against an appellant pursuant to Ind.Rules of Procedure, Appellate Rule 15(G). Nonetheless, Perez's claim fails under either provision. Perez is not entitled to attorney fees for being an unwilling litigant. We note that most litigants, especially defendants, are unwilling. Furthermore, the size of the trial court's judgment has no bearing on Salmon's right to institute this appeal. Finally, Salmon has presented cogent legal arguments with sufficient citations to the record and to relevant authority. We find his arguments were adequate and presented in good faith. Perez's claim for attorney fees is denied.

Judgment affirmed.

ROBERTSON, J., concurs.

SULLIVAN, J., concurs as to Issues I, II, IV and V, and concurs in result as to Issue III for the reason that exclusion of the relevant affidavit was harmless error.