Sandra KEEN, Individually and as Administratrix of the Estate of Richard Keen, Appellant–Plaintiff,

v.

ST. ELIZABETH HOSPITAL MEDICAL CENTER, as Plan Administrator of the St. Elizabeth Hospital Medical Center Health Care Benefits Plan for Employees, Appellee–Defendant.

No. 23A01–9103–CV–59.

Court of Appeals of Indiana, First District.

July 30, 1991.

---

Richard M. Malad, Indianapolis, for appellant-plaintiff.

John M. Stuckey, John C. Duffey, Lafayette, for appellee-defendant.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Sandra Keen, individually and in her capacity as Administratrix of the Estate of Richard Keen, appeals a summary judgment entered against her in an action brought against St. Elizabeth Hospital Medical Center, as Plan Administrator of the St. Elizabeth Hospital Medical Center Health Care Benefits Plan for Employees (St. Elizabeth). We reverse and remand.

## ISSUE

Whether the trial court erred in concluding as a matter of law that Richard Keen's injuries "arose out of" and "in the course of" his proprietorship of Keen's Inn?

## FACTS

The facts most favorable to the nonmovant reveal that Richard Keen (Keen) was the husband of Sandra Keen. Keen owned and operated Keen's Inn, an establishment that served food and alcoholic beverages.

On June 20, 1988, Keen was present at Keen's Inn along with Mickey Stanley, the bartender, and Geraldine Walizer, a waitress. Also present were Ralph Williams and his girlfriend, Elizabeth Thornton. Throughout most of the evening, Keen, Williams, and Thornton were engaged in friendly conversation.

Prior to the tavern's closing, Keen told Williams and Thornton (the only remaining patrons) to finish their beers and leave. Later that evening, when Thornton told Williams it was time to leave, Williams became angry and started calling Thornton vulgar names. When Walizer joined in the conversation and told Williams to stop calling Thornton vulgar names, Williams began calling Walizer vulgar names as well. Then Keen told Williams that he could not talk to Thornton and Walizer in such manner and to take his domestic squabble outside. This resulted in an argument between Keen and Williams. Keen told Williams to leave the tavern and barred him from returning. Williams responded that Keen was not big enough to throw him out. Thornton told Williams that she was leaving and told him to accompany her. As Thornton walked toward the door, Keen and Williams started pushing each other. Keen was located behind the bar while Williams was in front of the bar.

Finally, as Williams left the tavern, Keen followed him outside. While outside, the two men began pushing each other again. Walizer unsuccessfully attempted to come between them. Keen told her "she had better get out of the way if she didn't want to get hurt because they [Keen and Williams] were going to get a piece of each other". The scuffle ended with a punch by Williams to Keen's face. Keen fell backwards, struck his head on the pavement, and was rendered unconscious. He was taken to a Kokomo hospital and later, by Life Line Helicopter, transferred to Methodist Hospital in Indianapolis, Indiana. On March 12, 1989, Keen died of a respiratory

arrest due to seizure activity as a consequence of the head injury suffered on June 20, 1988.

As a result of the incident, Sandra Keen, an employee of St. Elizabeth Hospital requested that St. Elizabeth extend coverage under the St. Elizabeth Hospital Benefit Plan to reimburse her for her husband's care and medical expenses. By virtue of Sandra's employment, she and her husband were covered by the St. Elizabeth Hospital Benefit Plan. The plan covered employees and their eligible dependents. However, St. Elizabeth denied coverage of Keen's costs and medical expenses arising out of the June 20, 1988 incident because Keen's injuries were "job-related". The plan expressly excludes coverage for care received through a job-related injury.

Sandra Keen brought this action against St. Elizabeth; St. Elizabeth filed a motion and was granted summary judgment. Sandra Keen appeals.

## DISCUSSION AND DECISION

Sandra Keen contends that the trial court erred when it concluded as a matter of law that Keen's injuries "arose out of" and "in the course of" his proprietorship of Keen's Inn.

■ Our standard of review when determining the grant of summary judgment is identical to the trial court's: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mauller v. City of Columbus* (1990), Ind. App., 552 N.E.2d 500, 502. In determining whether a genuine issue of material fact exists, we consider all matters in a light most favorable to the non-movant. *Id.* at 502. Furthermore, this court in *Liebner v. Dobson* (1985), Ind.App., 474 N.E.2d 1039, 1040, *trans. denied,* concluded that every available inference must be resolved in favor of the plaintiff against the defendant. Therefore, even if the basic facts of a case are not disputed, a good faith dispute of the inferences which may be drawn from the undisputed facts will also preclude

summary judgment. In summary, the trial court will apply the law to the facts only when there are no disputable facts or inferences to be drawn therefrom. *Id.; Board of Aviation Commissioners of St. Joseph County, Indiana v. Hestor* (1985), Ind. App., 473 N.E.2d 151, 153.

This court has not yet addressed such an exclusionary clause under an employee health benefit plan as it applies to these facts; however, we recognize that other jurisdictions have applied principles of workmen's compensation law in similar cases. *See American Life Insurance Co. v. Barth* (1983), 167 Ga.App. 605, 307 S.E.2d 113, *cert. denied; Carter v. Metropolitan Life Insurance Co.* (1933), 47 Ga. App. 367, 170 S.E. 535; *Hubred v. Control Data Corp.* (Minn.1989), 442 N.W.2d 308; *Automobile Club Inter-Insurance Exchange v. Bevel* (Mo.1984), 663 S.W.2d 242; *Gage v. Connecticut General Life* (Mo.Ct. App.1954), 273 S.W.2d 761.

Under the Workmen's Compensation Act, an injury is compensated if it arises both "out of" and "in the course of" one's employment. IND. CODE § 22-3-6-1. In contrast, most insurance policies exclude coverage for injuries "arising out of" and "in the course of" employment in order to avoid duplication and overcompensation.

■ This brings us to the heart of this controversy: What constitutes "arising out of" and "in the course of" employment within the scope of Keen's proprietorship? In *Blaw-Knox Foundry & Mill Machinery, Inc. v. Dacus* (1987), Ind.App., 505 N.E.2d 101, 102, we determined the circumstances in which an injury occurs in the course of one's employment: "an accident occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while he is fulfilling the duties of his employment, or is engaged in doing something incidental thereto." The *Dacus* court also found an accident "arises out of" employment when there is a causal relationship between the employment and the injury. This causal relationship is established when the accident arises out of a risk which a reasonably prudent person

might comprehend as incidental to the work.

■ St. Elizabeth sets forth an analysis bringing Keen's injury within the course of his proprietorship of Keen's Inn. They allege that after Williams started calling Thornton and Walizer vulgar names, Keen ejected Williams from the tavern because as owner it was his duty to protect them. To support their allegation, they cite *Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383, 388 (citing *Glen Park Democratic Club, Inc. v. Kylsa* (1966), 139 Ind.App. 393, 213 N.E.2d 812, *trans. denied*) (tavern owner owes a duty to exercise reasonable care to protect their patrons (business invitees) from foreseeable disorderly acts of other patrons). Moreover, St. Elizabeth strengthens its analysis by concluding that Keen and Williams were having friendly conversations until Williams became unruly. Therefore, the argument between Keen and Williams outside was a continuation of what began inside. St. Elizabeth relies upon similar cases, such as *Gardner v. Industrial Accident Commission* (1946), 73 Cal.App.2d 361, 166 P.2d 362, and *Johnson v. Nationwide Life Insurance Co.* (1967), 7 Mich. App. 441, 151 N.W.2d 840.

In *Gardner*, a bartender refused to serve a patron whom appeared to be intoxicated. As a result, the patron became angry and tried to hit the bartender with his fist. The bartender ejected the patron from the tavern and in the process was injured. The court held that the bartender's injury occurred in the course of his employment. *Gardner*, 166 P.2d at 365. In *Johnson*, a plaintiff and his foreman got into an argument. The foreman left and returned with a screwdriver and stabbed the plaintiff twice in the chest. The *Johnson* court reversed the trial court's grant of summary judgment in favor of the employer. The court found that the plaintiff's injury "arose out of" and "in the course of" employment because the record lacked any evidence that the two men had cooled down from the initial altercation.

Conversely, Sandra Keens argues that the above cases are distinguishable. Unlike Gardner, Keen did not eject Williams, but followed Williams outside as Williams left the bar freely and voluntarily. Furthermore, after Keen told Williams to leave and Williams started walking out of the door, Keen successfully and completely protected Walizer and Thornton. Therefore, when Keen followed Williams outside the tavern, the issue had become personal and Keen was acting in his individual capacity and not as proprietor of Keen's Inn.

Sandra Keen further points out that Keen could be on the premises of his business acting in his individual capacity and not in a proprietor capacity; and under no circumstances could starting a fist fight be one of the duties nor incidental thereto of a proprietor of a restaurant.

We conclude that the evidence in this case reveals factual determinations and inferences in which summary judgment was inappropriate. As we stated years ago in *Reed v. Brown* (1958), 129 Ind.App. 75, 82, 152 N.E.2d 257, 260, there is no doubt one must draw the line somewhere. However, the line between where an act occurs in the course of one's employment and where an act does not is usually a question for the triers of fact. The trial court's decision is reversed and remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

BAKER, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

I agree that conflicting inferences which might reasonably be drawn from the evidence, would permit different conclusions as to whether Keen's injury was "job related". I do not, however, agree that the terms "job related" and "arising out of and in the course of employment" are necessarily coterminous.

While it may be accurate to say that an injury arising out of and in the course of employment is unquestionably job-related, the converse is not necessarily true. An injury might have some relationship to the

job but might not meet the more stringent test for "arising out of and in the course of."

Subject to this caveat, I concur.