George R. WILSON, Appellant,

v.

Monous E. ELLIOTT, et al, Appellee.

No. 42A01–9111–CV–356.

Court of Appeals of Indiana,
First District.

March 31, 1992.

Maurice E. Doll, Vincennes, for appellant.

K. Richard Hawley, Hawley, Hudson & Almon, Mount Vernon, Rabb Emison, Emison, Doolittle, Kolb & Roellgen, Vincennes, for appellee.

BAKER, Judge.

Defendant-appellant George R. Wilson (Wilson) appeals an adverse judgment entered on a claim by plaintiff-appellees Monous E. Elliott, David R. Elliott, and Elbert E. Elliott, D/B/A Elliott and Sons (collectively Elliott and Sons). Elliott and Sons sought injunctive relief to preclude Wilson from interfering with an oil and gas lease given by Wilson to Elliott and Sons. Wilson raises four issues for our review, which we restate as:

I. Whether the trial court erred when it concluded Wilson did not file an adequate affidavit in the Office of the Recorder of Knox County.

II. Whether the court erred when it concluded there was never a one-year period during the time in question when operations and production for oil and gas ceased.

III. Whether the trial court erred when it concluded that production or operations for oil and gas do not necessarily include payment of proceeds to the landlord within a reasonable time or the use of best efforts to market the petroleum.

IV. Whether the trial court erred when it concluded Elliott and Sons forfeited the lease only if operations on the entire 120–acre oil field ceased.

## FACTS [1]

On April 24, 1965, Elliott and Sons entered into an oil and gas lease with Wilson (Lease No. 1), which covered 140 acres in Knox County. Wilson owned the surface rights and an undivided one-half interest in the oil and gas rights leased to Elliott and Sons, and the State Life Insurance Company owned the other one-half interest. On May 5, 1965, Elliott and Sons also entered into a lease with The State Life Insurance Company (Lease No. 2), which included in part 20 acres also covered under Lease No. 1. The State Life Insurance Company is not a party to this action, however. In accordance with the terms of the oil and gas leases, Elliott and Sons drilled oil wells that produced oil continuously until 1973.

In 1973, Elliott and Sons entered two new oil and gas leases with Wilson (Lease No. 3 and Lease No. 4). These leases partially superseded Lease No. 1. Lease No. 3, commonly referred to as the "Wilson Lease," covered 70 acres, and Lease No. 4 covered 50 acres. A special provision inserted into Lease No. 4 provided for the total 120 acres embraced in the two leases to be deemed a unit. Pursuant to the terms of the Wilson Lease, Elliott and Sons drilled five producing oil wells and one dry hole. Some 40 acres under Lease No. 4 were operated by Spartan Oil Company, and the three oil wells located on the land have produced oil continuously since 1973. The 20 acres originally covered under Leases No. 1 and 2 became part of a waterflood unit [2] and were operated by another oil

---

1. The facts recited here are from the trial court's Findings of Fact. *Record* at 49–52. In their briefs, neither party gave a concise narrative statement of the facts as required by Ind.Appellate Rule 8.3(A)(5). Furthermore, we remind the parties that the facts are to be given in a light most favorable to the judgment and appropriate references to the record should be supplied. *See Moore v. State* (1981), Ind.App., 426 N.E.2d 86; *Northside Sanitary Landfill, Inc. v. Indiana Environmental Mgt. Bd.* (1984), Ind. App., 458 N.E.2d 277.

2. According to testimony given by Charles C. White, Elliott and Sons's expert geologist, waterflooding is a technique used by pumpers to increase energy in the well to increase production. The procedure is necessary when gas in the well becomes depleted and there is a resulting shortage of energy to move the oil. Injecting water into the well-head creates pressure which drives the oil. *Record* at 390–92.

company until January 1990. [See Appendix for diagram of land covered under the leases.]

Elliott and Sons pumped the five wells and produced oil under the Wilson Lease continuously from 1973 until the end of 1987. In 1986, prices for crude oil dropped dramatically and many oil and gas lease operators slowed production pending a rebound in crude oil prices. Oil not sold was stored in tanks. During 1987, Elliott and Sons engaged the services of a geologist to evaluate the Wilson Lease for future production, and it replaced two bottom-hole pumps on the wells. Elliott and Sons also pumped and produced oil from the wells in October and November of 1988, and in January and April of 1989. Oil was sold in May and August of 1987, and oil from storage was sold in April and May of 1989.

On April 3, 1989, Wilson filed an affidavit in the office of the Recorder of Knox County. In the affidavit he requested the termination of a 60–acre portion of Lease No. 1, including 40 acres also covered under the Wilson Lease and 20 acres in the waterflood unit. He claimed the partial termination was proper because Elliott and Sons did not sell oil between August of 1987 and April of 1989, a period of more than one year. Elliott and Sons filed a responsive affidavit refuting the termination on June 1, 1989.

In the meantime, Wilson obstructed the entrance to the Wilson Lease by putting up cable and a no trespassing sign, and he removed the magnetos from all the wells on the property, thus making the wells inoperable. Elliott and Sons responded by seeking an injunction to enjoin and restrain Wilson from interfering with its lease. The trial court granted the injunction and enjoined Wilson from interfering with Elliott and Sons's right to enter the leased land. Wilson now appeals.

## STANDARD OF REVIEW

The trial court entered specific findings of fact and conclusions of law under Indiana Trial Rule 52(A). When reviewing the trial court's findings, we must determine first whether the findings are suffi-cient to support the judgment, and second whether the evidence is sufficient to support the findings. *Vanderburgh County Bd. of Commissioners v. Rittenhouse* (1991), 575 N.E.2d 663, 665, *trans. denied.* We will reverse the judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions of law entered on those findings. *Id.* Even if the judgment is supported by the findings of fact and conclusions of law, we may nonetheless reverse the judgment if the findings of fact are clearly erroneous based on the evidence presented. *Id.*

Here, the trial court entered findings in favor of Elliott and Sons, the party bearing the burden of proof. Wilson therefore appeals an adverse judgment. *See id.* When a party appeals an adverse judgment, this court decides whether the trial court's findings are clearly erroneous by determining whether there is substantial evidence of probative value to support the findings. *Id.* Even if there is evidence that supports the findings, we will still find the judgment clearly erroneous if we are left with a definite and firm conviction a mistake has been made. *Id.* (citation omitted).

## DISCUSSION AND DECISION

### I

#### *Inadequate Affidavit*

First, Wilson argues the trial court erred when it concluded the affidavit he filed in the Office of the Recorder of Knox County was inadequate to cancel of record the Wilson Lease held by Elliott and Sons. Because oil and gas leases give the lessee a secondary, non-possessory interest in the real estate, land titles which are encumbered by outstanding oil and gas leases are usually considered unmarketable. A marketable title is generally defined as "one which is free from reasonable doubt and will not expose the party who holds it to the hazards of litigation." *Salmon v. Perez* (1989), Ind.App., 545 N.E.2d 21, 25 (citation omitted).

IND.CODE 32–5–8–1 sets forth procedures for a record owner of title to remove abandoned oil and gas leases from the land title, and thereby create a marketable title. IND.CODE 32–5–8–1 provides, in relevant part:

[U]pon the written request of the owner of such lands, accompanied with the affidavit of such owner, stating that no rentals have been paid to or received by such owner or any person, bank or corporation in his behalf for a period of one (1) year after they have become due, and that such leases and contracts have not been operated for the production of oil or gas for one (1) year, the recorder of the county in which such real estate is situated shall certify upon the face of such record that such leases and contracts are invalid and void by reason of nonpayment of rentals and is thereby canceled of record, which request and affidavit shall be recorded in the miscellaneous records of said recorder's office.

The ease with which the above provision allows oil and gas leases to be removed from land titles is consistent with the underlying policy of the Indiana Marketable Title Act. IND.CODE 32–1–5–1 to 32–1–5–10. As enacted by the Indiana legislature, the Indiana Marketable Title Act facilitates land title transactions by providing clear and reliable record titles on which purchasers may rely. *Salmon, supra.*

In this case, the record reveals that on April 3, 1989, Wilson filed an affidavit in which he claimed a forfeiture of part of Lease No. 1, which was executed in 1965. *Record* at 224. Wilson apparently shifted gears at trial, however, and began claiming a forfeiture of part of Lease No. 3, which was executed in 1973 and known as the Wilson Lease. The trial court concluded Wilson failed to comply with IND.CODE 32–5–8–1 because the affidavit he filed did not correctly describe the lease he sought

**3.** At oral argument, heard in Indianapolis on March 12, 1992, Wilson also argued that IND. CODE 32–5–8–1 provides for the partial cancellation of leases. We disagree. If we interpreted IND.CODE 32–5–8–1 as permitting partial cancellation of leases, lessors would be free to cancel from leases any parcel of land, no matter

to have forfeited or the land the lease covered. We agree.

■ Under the statute, only upon written request of the owner will the county recorder certify on the land title that the oil and gas lease and contracts are invalid and void. *See Salmon, supra,* at 24. Logically, if the written request incorrectly identifies the land and the lease, the county recorder cannot certify on the appropriate title which lease is null and void. Incorrect certifications destroy the goal of clear and reliable record titles. The trial court did not err, therefore, when it concluded Wilson incorrectly identified both the land and the lease when in his affidavit he sought to have part of the 1965 lease cancelled, but at trial he sought to have part of the 1973 Wilson Lease cancelled.[3] *See id.* Because filing an adequate affidavit is a condition precedent to having an oil and gas lease rendered void on the record title, and because Wilson did not meet this condition, Elliott and Sons's oil and gas leases are still valid. Even if we were to find that Wilson met the statutory requirement of providing the recorder with an adequate affidavit, we would nevertheless affirm the trial court's judgment on the remaining issues.

## II

### *Cessation of Operations and Production*

Wilson argues the trial court erred when it concluded there was never a one-year period between August of 1987 and April of 1989 when operations and production of oil and gas ceased. IND.CODE 32–5–8–1 provides, in relevant part:

Sec. 1. All leases for oil and gas heretofore and hereafter entered of record in this state shall become null and void after a period of one (1) year has elapsed since the last payment of rentals thereon as stipulated for in such lease or con-

how large or small, provided there was no production or development on the specific piece of land for a period of more than one year. The land covered by a lease is deemed a unit, and it is the nonproduction and nondevelopment of the unit as a whole that supports cancellation of the lease.

tract, or since operation for oil or gas has ceased, both by the nonproduction of oil or gas and the nondevelopment of said lease....

Specifically, Wilson complains the trial court failed to explain what conduct constituted "operation for oil or gas," as that phrase is used in Chapter 8 of the statute. At trial, Elliott and Sons argued the appropriate definition of "operation" was found under IND.CODE 32-5-7-1(e). IND. CODE 32-5-7-1 states, in relevant part:

Sec. 1. When used in this chapter, the following words and phrases shall have the respective meanings hereinafter set forth:

....

(e) "Operations for oil and gas" shall, unless otherwise indicated by the context of this chapter, mean the exploring, testing, surveying or otherwise investigating the potential of the subject lands for oil and gas, the actual drilling or preparations for drilling of wells therefor, or any other actions directed toward the eventual production or attempted production of oil and gas from such lands.

■ Although Wilson admits the trial court neither adopted nor rejected the definition advanced by Elliott and Sons, Wilson states in his brief that he "is left to believe the Court applied the test set forth in IC 32-5-7-1(e)." *Appellant's Brief* at 15. Wilson claims the definition under IND. CODE 32-5-7-1(e) applies only to Chapter 7, and it would be error to apply the language to interpret IND.CODE 32-5-8-1. To support his argument, Wilson notes that IND.CODE 32-5-7-1 used to state that the definitions applied to words or phrases used in the "act." Effective February 24,

1982, however, the Indiana legislature substituted the word "chapter" for "act," which Wilson argues limits application of the definitions under IND.CODE 32-5-7-1 to Chapter 7 only. P.L. 187-1982, Sec. 41. Accordingly, he asserts it would be error to apply the Chapter 7 definition of "operations for oil and gas" to a provision under Chapter 8.[4]

■ The issue for our review is whether the trial court's findings supported the judgment that there was not a one-year period during the time in question when operations for oil or gas had ceased, and whether there was substantial evidence of probative value to support the findings. *See Vanderburgh County Bd. of Commissioners, supra,* at 665.

IND.CODE 32-5-8-1 provides that an oil and gas lease becomes null and void after the elapse of one year since "operation for oil or gas has ceased, both by the nonproduction of oil or gas and the nondevelopment of said lease...." Under the plain terms of this section, operations cease when there is both nonproduction and nondevelopment. With this definition in mind, we will review the trial court's findings of fact regarding "operations."

Under Finding No. 13, the trial court found that during 1988, Elliott and Sons employed a pumper to run the Wilson Lease, and the pumper went to the lease approximately once every two weeks and started at least two of the wells and produced oil. According to Finding No. 14, Elliott and Sons engaged the services of a geologist in 1987 to evaluate the Wilson Lease for its potential for production of oil by secondary recovery operations. Finding

---

4. We remind Wilson this court presumes the trial court correctly applied the law, and it is the appellant's burden to demonstrate reversible error. *Abels v. Monroe County Education Ass'n* (1986), Ind.App., 489 N.E.2d 533, 540, *cert. denied,* 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518. To bring the issue before this court for review, Ind.Appellate Rule 8.3(A)(7) requires that the argument section of the appellant's brief must contain "the contentions of the appellant with respect to the issues presented, [and] the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied on...."

Here, Wilson offers no support for concluding the trial court adopted the definition of "operation" found under IND.CODE 32-5-7-1(e). The mere allegation that the trial court applied an incorrect definition without specific references to the record to support the assertion presents nothing for our review. *See Anderson v. Indiana State Employee Appeals Commission* (1977), 172 Ind.App. 529, 532, 360 N.E.2d 1040, 1043. Accordingly, we need not address further the issues of whether the trial court applied the IND.CODE 32-5-7-1(e) definition of "operations for oil and gas," and whether the application was erroneous.

No. 15 reveals that in 1987 the geologist obtained an Environmental Protection Agency permit for the disposal of water in the No. 6 well on the Wilson Lease. Finally, Finding No. 16 discusses the plan that Elliott and Sons pursued with the geologist in 1987 and 1988 regarding proposed water-flooding of the Wilson Lease.

After reviewing the record, the evidence Elliott and Sons offered at trial was more than sufficient to support the above findings. Furthermore, these findings clearly support the judgment that there was not a one-year period between August of 1987 and April of 1989 when there was both nonproduction and nondevelopment of the Wilson Lease. The trial court properly concluded Elliott and Sons's lease did not become null and void due to cessation of operations and production.

### III

### *Payment of Proceeds*

■ Next, Wilson argues the trial court erred when it concluded that production or operations for oil and gas do not necessarily include either payment of proceeds to the landlord within a reasonable time or the use of best efforts to market petroleum. He asserts that under the contract, Elliott and Sons was required to use its best efforts to operate the lease in a manner resulting in reasonable and timely payments. The lease he refers to contains the following language: "IT IS AGREED that this lease shall remain in force for a term to July 1, 1973, and as long thereafter as oil or gas, or either of them, is produced from said land by lessee." *Record* at 135. Wilson maintains that production means "pump the oil, sell the oil, pay the lessor his interest." *Appellant's Brief* at 18. We disagree.

The Indiana legislature has codified rules to determine when cessation of production after the primary term of the lease expires causes a lease to terminate. Under IND. CODE 32–5–8–1, a landowner may claim cancellation of the lease when a one-year period has elapsed and the lessee has not paid rentals as stipulated for in the lease or contract, or the operator has not conducted operations, both by not producing oil, and by not developing the lease.

■ Neither the statute nor the parties' contract provides for cancellation of the lease solely because of Elliott and Sons's failure to pay Wilson for more than a one-year period. This court must hold a statute to its clear and plain meaning. *Vanderburgh County v. West* (1991), Ind. App., 564 N.E.2d 966, 967, *trans. denied.* We are prohibited from putting something into a statute that the legislature omitted. *Id.* Similarly, when the terms of a contract are clear and unambiguous, we will not construe the contract, *Jackson v. DeFabis* (1990), Ind.App., 553 N.E.2d 1212, 1215, nor will we add provisions to a contract not agreed upon by the parties. *Wabash Ford Truck Sales v. Ford Motor Co.* (1984), Ind. App., 472 N.E.2d 611, 614, *trans. denied.* Because a payment provision is not a term of the contract and the statute does not provide for cancellation based on failure to pay unless the provision is in the contract or lease, the trial court did not err when it concluded the lease did not terminate when Elliott and Sons did not pay Wilson for over a one-year period.

In support of his position, Wilson cites this court's opinion in *Plymouth Fertilizer Co., Inc. v. Balmer* (1986), Ind.App., 488 N.E.2d 1129, 1135. In that case, the trial court held that the lessor's affidavit triggered cancellation of Plymouth's oil and gas lease because Plymouth failed to pay the rent, made no effort to physically maintain the wells, and invested no money to maintain the wells for more than a one-year period. Furthermore, between 1963 and 1979, Plymouth made no serious attempts to find a market for the gas that was discovered on the property. Because there was evidence in the record to sustain the findings, and the findings were not contrary to law, this court affirmed the judgment of the trial court. *Id.*

The facts in the present case are clearly distinguishable from the facts in *Plymouth Fertilizer.* Here, Elliott and Sons produced oil, maintained the wells, and worked to develop the leases during the period in

question. Wilson complains only that Elliott and Sons did not sell any oil between August 1987 and April 1989. These facts compare poorly to the lack of production, lack of maintenance, and 16–year lack of marketing in *Plymouth Fertilizer*. The deficiencies present in *Plymouth Fertilizer* do not exist in the present case.

## IV

### *Cessation of Operations Over Entire 120–Acre Field*

 Finally, Wilson argues the trial court erred when it concluded Elliott and Sons forfeited the lease only if its operations ceased on the entire 120–acre oil field. After negotiations, the parties inserted the following language into Lease No. 4:

> This lease shall be construed as being co-extensive with a certain lease of even date [Lease No. 3] from the same lessors covering the balance of the West Half of the Northwest Quarter of said Section 14, and the first four typewritten paragraphs of said lease of even date are incorporated herein by reference, and in so far as the term of each lease is concerned and in so far as a drilling program is concerned *the entire 120 acres embraced in the two leases shall be deemed a unit, and any well drilled under either lease shall be deemed as compliance with both leases to that extent.*

*Record* at 432 (emphasis added). The trial court determined that the inserted language was clear and unambiguous and indicated that the parties intended the two leases to be treated as one. We agree.

It is well recognized by this court that "[w]hen a matter is expressly covered by a written instrument, the unambiguous provisions of that instrument control and the intent of the parties will be determined from within the 'four corners' of the instrument." *Orkin Exterminating Co., Inc. v. Waters* (1984), Ind.App., 466 N.E.2d 55, 60, *trans. denied.* Accordingly, the trial court did not err when it concluded Elliott and Sons forfeited its lease only when operations ceased over the entire 120–acre unit.

Judgment affirmed.

RATLIFF, C.J., and STATON, J., concur.

APPENDIX

| KEY | | | |
|---|---|---|---|
| Lease No. 1 | | Wilson's Affidavit | |
| Lease No. 3 | | Oil Well | |
| Lease No. 4 | | Dry Well | |