Mark J. McKECHNIE, Plaintiffs,

v.

Thomas M. McDERMOTT, et al., Defendants.

No. H 84–60.

United States District Court, N.D. Indiana, Hammond Division.

Oct. 1, 1984.

Robert Berger, Straley M. Thorpe, Munster, Ind., for plaintiffs.

Charles A. Myers, Joseph M. McGovern, Hammond, Ind., for defendant Thomas M. McDermott, City of Hammond, Ind.

## ORDER DENYING PRELIMINARY INJUNCTION

KANNE, District Judge.

The plaintiff, Mark J. McKechnie, was employed by the City of Hammond, Indiana, as the "transportation coordinator." In that position he coordinated the operation of a city bus system financed by federal grants. While serving in that capacity Mr. McKechnie vigorously supported the political campaign for re-election of Edward J. Raskosky as the mayor of the City of Hammond.

Mr. Raskosky lost the race on November 8, 1983, and Mr. McKechnie was subsequently fired by the newly elected mayor, the defendant, Thomas M. McDermott.[1]

Mr. McKechnie asserts that his discharge as a city employee was politically motivated and that he had a constitutionally protected right in that position to use his influence in the mayoral election and actively support the re-election of Mr. Raskosky.

Mayor McDermott argues that the discharge of Mr. McKechnie from city government was not politically motivated but rather that it was budgetary in nature and necessitated by a reorganization within the city administration.

For the purpose of deciding the request for preliminary injunction the court rejects the argument of the defendants and accepts the underlying assertion of Mr. McKechnie that his discharge as a city employee was substantially motivated by political considerations as some of the evidence strongly suggests.

---

1. Mayor McDermott was sworn in on January 1, 1984, and continues to serve presently. On January 1, 1984, plaintiff was informed that he was fired.

However, the court must examine the key premise of Mr. McKechnie which is that he had a constitutionally protected right, notwithstanding his governmental employment, to use his influence in the mayoral election and actively support the re-election of his political leader and "employer"—Mayor Raskosky.[2]

There is no question that some of Mr. McKechnie's political activities were protected by the First Amendment. However, reasonable inferences drawn from the evidence presented thus far leads the court to the preliminary conclusion that Mr. McKechnie improperly used his official authority and influence to support Mr. Raskowsky for re-election.

*Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) established the general rule that a non-policymaking, non-confidential government employee cannot be discharged from a job satisfactorily performed upon the sole ground of his political belief. The Seventh Circuit has stated the reasoning behind the *Elrod* rule, with its exception for policymaking or confidential employees, is that "the dismissal of public employees for reasons of political patronage violates the first amendment," *Livas v. Petka*, 711 F.2d 798, 800 (7th Cir.1983), and, that a "termination based solely on an employee's political affiliation would be a deprivation of his first amendment rights to freedom of association and freedom of belief," *McClure v. Cywinski*, 686 F.2d 541, 544 (7th Cir.1982).

Nevertheless, federal laws which limit the right of nonpolicy making and nonconfidential governmental employees to engage in political activity have been upheld as constitutionally acceptable. *See CSC v. Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). In the *Letter Carriers* case, which reviewed the rights of federal employees under Title 5 U.S.C. § 7324, commonly known as the "Hatch Act," the Supreme Court stated:

> Neither the right to associate nor the right to participate in political activities is absolute ....

*Id.* at 2891, 93 S.Ct. 2880. The validity of the limitation on First Amendment rights approved in *Letter Carriers* was later acknowledged in *Elrod* and distinguished as a proper legislative restraint on political activity.

Parallel Hatch Act legislation also imposes restrictions on political activities of certain state and local governmental employees. The aspect of the Hatch Act which applies to local governmental employees is set forth in Title 5 U.S.C. §§ 1501–1508. More specifically § 1502(a)(1) states:

> A ... local official or employee may not—
>
> > use his official authority or influence for the purpose of ... affecting the result of an election or a nomination for office.

Section 1501(4) defines an official as:

> [A]n individual employed by a state or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the U.S. or a Federal agency.

By his own admission, Mr. McKechnie falls within the scope of the Hatch Act. Specifically Mr. McKechnie states that he was "paid in connection with an activity which was financed in part by grants made by the U.S. or a federal agency." (Plaintiff's Reply Brief in Support of Application for Preliminary Injunction p. 17.) Further, testimony by Mr. McKechnie at the hearing indicated that the position of transportation coordinator involved making applications for federal and state funding to finance the Hammond transportation system for which he was responsible. Mr. McKechnie then agrees that the provisions of the Hatch Act apply to him.

■ However, a city employee's active participation in a political campaign is not

**2.** Mr. Raskosky approved the hiring of Mr. McKechnie in 1982 and in testimony Mr. McKechnie stated that he was campaigning for Mr. Raskosky because, "I like to support my employer."

in itself sufficient to cause a violation of the Hatch Act even if the agency for which the employee works is federally funded.[3] The question the court must address is whether Mr. McKechnie used his "official authority or influence" to affect the mayoral campaign in violation of § 1502(a)(1) of Title 5.

Mr. McKechnie readily admits that while he served as transportation coordinator he actively participated in the Raskosky campaign. During testimony he stated that he attended two fundraisers for Raskosky including a $250.00-a-plate dinner; that he worked at Raskosky's headquarters one night a week; that he displayed a sign and a bumper sticker for Raskosky; that he attended several political rally bingoes; and that he wore an "Eddie" button to show support for Mr. Raskosky. Prior to the 1974 amendment, some of these activities certainly would have been violations of the Hatch Act—they are no longer.[4]

However, other activities in which Mr. McKechnie's official authority and influence could be used to affect the mayoral election were disclosed by the evidence.

First, as transportation coordinator Mr. McKechnie had control over advertising and promotion for the bus line. This specifically included control over advertising on city buses. In addition, Mr. McKechnie participated in commercial radio broadcasts regarding Hammond bus services. During the campaign free bus service coupons were made available. Although a policy

had been adopted which did not permit paid advertising on city buses, Mayor Edward J. Raskosky's name was displayed prominently on city buses. The city was not compensated for this "free advertisement."

Second, Mr. McKechnie was involved in a "walking campaign" for Mayor Raskosky. The "walking campaign" consisted of a group of campaign workers walking through different neighborhoods, knocking on doors, and talking with the public to see whether or not they wished to speak with Mayor Raskosky who was usually present. Mr. McKechnie testified that the walking campaign occurred during weekdays between 10:00 A.M., and 2:00 P.M., which were ordinarily his working hours.[5] The evidence presented at the preliminary hearing does not disclose whether or not Mr. McKechnie identified himself as the coordinator for bus service in the City of Hammond during the "walking campaign" nevertheless, this activity was conducted during the time Mr. McKechnie would have been carrying out his activities as transportation coordinator.

Third, Mr. McKechnie stated that he solicited money for the political campaign by selling tickets for Mayor Raskosky's $50.00 per ticket fundraiser. If this solicitation of funds for the Raskosky campaign was directed to employees of a federally funded city agency there could be a violation of subsection (a)(2) of § 1502 of Title 5 which prohibits a city employee in a federally

---

**3.** A significant amendment to the Hatch Act applying to certain state and local governmental employees occurred in 1974. Specifically, subsection (a)(3) of Section 1502 was amended by substituting as the prohibited conduct that a state or local employee could not, "be a candidate for public elective office" for "take an active part in political management or in political campaigns." To the contrary federal employees may still not "take an active part in political management or political campaigns." 5 U.S.C. § 7324(a)(2).

**4.** This and later described conduct shows that Mr. McKechnie was a partisan and active political supporter of the mayor who employed him for the federally funded program—Mr. Raskosky.

As this case discloses, federal tax money in the form of block grants is directly applied by local officials to the employment of loyal political supporters. It is ironic that *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), combined with the 1974 amendment of § 1502(a)(3) of Title 5 has fostered a "political civil service" which has been imposed on state and local governments. In this "political civil service" employees are hired with federal funds for partisan political reasons, function as political operatives and politics cannot be used as a basis for discharge.

This is a curious use of federal funds for job security based on political activity.

**5.** Mr. McKechnie states that he was using "comp time" to be with Mr. Raskosky during this "walking campaign."

funded program from directly or indirectly coercing other such employees to contribute to any organization for political purposes. There is, however, no evidence at this point to suggest that the solicitation engaged in by Mr. McKechnie was improper.

At a minimum, based on the evidence produced at the preliminary hearing, the inference is that Mr. McKechnie's use of his official authority and influence regarding the operation of the bus system constituted a violation of the Hatch Act.

■ It is well-established that a party seeking a preliminary injunction has the burden of establishing (1) a reasonable likelihood of success on the merits; (2) irreparable injury and absence of an adequate remedy at law; (3) that the threatened harm to plaintiff outweighs the harm the injunction may cause defendant; and, (4) that the granting of the injunction will not disserve the public interest. *Ciechon v. City of Chicago*, 634 F.2d 1055, 1057 (7th Cir.1980), *Fox Valley Harvestore v. A.O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir.1976). Further, the party seeking the preliminary injunction must carry the "burden of persuasion as to all the prerequisites." *Ciechon v. City of Chicago*, 634 F.2d at 1057, *Fox Valley Harvestore v. A.O. Smith Harvestore Products, Inc.*, 545 F.2d at 1097. Plaintiff has failed to meet this burden on at least one of these elements and accordingly his motion for a preliminary injunction must be denied.

■ In order to receive the benefit of injunctive relief, plaintiff must show that granting an injunction would not disserve the public interest. *See Ciechon v. City of Chicago*, 634 F.2d at 1057. Public interest would clearly be disserved where a plaintiff sought injunctive relief as a means of insulating himself from the consequences of his own wrongdoing. "A preliminary injunction is an equitable remedy which need not be granted where the parties lack clean

hands." *Clairol, Inc. v. Gilette Co.*, 270 F.Supp. 371 (D.C.N.Y.) *aff'd* 389 F.2d 264 (Cir.1967). A plaintiff cannot seek relief against the wrong of another where he himself has engaged in the same wrong or a wrong with reference to the same matter. *See generally Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347 (9th Cir.1963).

■ At this stage of the case, plaintiff McKechnie does not appear to come to equity with clean hands. Specifically, it appears likely that he violated a federal statute by engaging in prohibited political activity while employed as the Hammond transportation coordinator. Mr. McKechnie complains that Mr. McDermott interfered with his first amendment rights by firing him for campaigning for ex-mayor Raskosky. However, before Mr. McKechnie can be granted relief from this alleged wrong, he must show that he himself did not commit a wrong by engaging in the limited area of prohibited political activities. This Mr. McKechnie has not done. Where, as here, it appears that a federal statute has been violated by activities Mr. McKechnie had no right to engage in, no public interest would be served in granting plaintiff injunctive relief from the consequences of his apparent violation, to-wit: discharge. Although the determination that plaintiff's activities constituted the use of his position to influence an election was for a federal administrative agency,[6] it appears from the evidence that he may have used his office in an attempt to obtain the re-election of Mr. Raskosky. In light of Mr. McKechnie's apparent wrongdoing, no public interest would be served by preliminarily reinstating him to office regardless of defendant's motivation for firing him. Two wrongs have never made a right and neither wrongdoer is entitled to benefit at the expense of the public. As the court stated in *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d at 350, "The relative extent of each party's wrong upon the

---

6. Under 5 U.S.C. § 1504, the question of whether Mr. McKechnie violated the Hatch Act by using his official authority or influence while participating in Mr. Raskosky's campaign was for the Merit System Protection Board to decide upon recommendation of the special counsel.

other and upon the public should be taken into account and an equitable balance struck ... (citations omitted)." The laws of the United States apply to all its citizens equally. Each person is expected to conform to the laws and cannot claim an exemption based on someone else's wrongdoing. But this is precisely what plaintiff McKechnie seeks to do. Mr. McKechnie cannot ask this court to overlook what appears to be his wrongful activity and allow him preliminary equitable relief which in effect would shield him from the consequences of a Hatch Act violation.

Mr. McKechnie has thus far failed to meet the burden of persuasion on an element necessary for the granting of a preliminary injunction. Mr. McKechnie cannot show that granting a preliminary injunction would not do disservice to the public where it appears that he violated a federal statute which forbids the activities he engaged in.

IT IS THEREFORE ORDERED that the motion of plaintiff, Mark J. McKechnie, for Preliminary Injunction is hereby DENIED.