BENEFICIAL MORTGAGE CO. OF
INDIANA, Plaintiff/Appellant,

v.

Constance A. POWERS, and James H.
Young, Defendants/Appellees.

No. 82A01–8904–CV–135.

Court of Appeals of Indiana,
First District.

Feb. 28, 1990.
Rehearing Denied April 16, 1990.

William C. Welborn, Welborn Law Offices, Evansville, for plaintiff/appellant.

Richard G. D'Amour, Zoss D'Amour Krohn & Collins, Donald R. Wright, Wright Evans & Daly, Evansville, for defendants/appellees.

BAKER, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Beneficial Mortgage Co. of Indiana (Beneficial), appeals a negative judgment entered in favor of defendant-appellees, Constance A. Powers (Constance), and James H. Young (Young), in a mortgage foreclosure action.

We affirm.

## STATEMENT OF THE FACTS

The facts most favorable to the judgment reveal that Constance was married to Donald J.B. Powers (Donald) for over thirty years. With the exception of one year when she worked outside the home, Constance was a housewife during her entire married life. The Powers owned a home as tenants by the entireties encumbered by a mortgage in favor of Union Federal Savings Bank.

On four separate occasions in 1985, 1986 and 1987, Donald approached Beneficial seeking additional mortgages on the couple's real estate. On each occasion, Donald appeared alone at Beneficial's office and made excuses as to why Constance was unable to accompany him. After signing the documents in the presence of James Goodwin, Beneficial's manager, Donald took the documents to obtain Constance's signature. Donald would then return to Beneficial with the documents purportedly signed by Constance. The signatures on all of the documents were acknowledged by a notary; Young acknowledged the last three documents while the first document was acknowledged by a notary unrelated to the present case.

Donald obtained the acknowledgements by inviting Young to his home, leaving Young's presence to get Constance's signature, proceeding to a separate room where his wife was presumably located, and returning with the documents purportedly signed by Constance. Of the three documents acknowledged by Young, one did not contain his typed name, county of residence or commission expiration date. The other two documents contained this information, but it had been typed in by Beneficial subsequent to Young's affixing his signature. Young provided his acknowledgements as a favor for which he received no compensation.

Beneficial approved each of the additional mortgages and issued disbursement checks payable to Donald and Constance. Each check bore Donald's endorsement along with the purported endorsement of Constance. Each additional mortgage was designated confidential to accomodate Donald's request that all statements and correspondence be sent to a post office box rather than the Powers' home.

In June, 1987, Donald, together with some close family friends, approached Constance concerning, inter alia, the Beneficial mortgages. Just prior to this confrontation, Donald confessed his actions to Wilma Stevens, one of the couple's friends. Donald told Mrs. Stevens that he had forged Constance's signature on the loan doc-

uments and that he thought the loan officer knew he was doing so. Donald then told Constance he had forged her signature on the documents. For the first time, Constance was informed of the additional mortgages with Beneficial. She was also told that everything they owned was gone. In the ensuing days, Donald produced the forged loan documents confirming the situation to Constance. At Constance's insistence, their house was put up for sale. Constance testified at trial that she insisted on selling their house because she felt it was the only way to satisfy the large debt incurred by Donald.[1] She explained that she believed she was partly responsible for Donald's obligations because she was married to him.

Shortly after Donald confessed his actions to Constance, he issued a check postdated to July 31, 1987, payable to Beneficial. Constance knew their personal checking account did not contain sufficient funds to cover the check and she asked Donald not to deliver it to Beneficial. Donald delivered the check anyway.

On July 22, 1987, Donald died of a self-inflicted gunshot wound. Shortly thereafter, in late July, Constance stopped payment on the July 31 check to Beneficial, contacted an attorney and disavowed the mortgages and notes issued thereon. On July 31, 1987, the outstanding balance on the Beneficial mortgages was $41,403 plus interest at the rate of 14% per annum.

Beneficial subsequently brought a mortgage foreclosure action against Constance and an action for damages against Young. Following a trial, the trial court entered findings of fact, conclusions of law and a judgment in favor of Constance and Young. Beneficial appeals.

## ISSUE

Beneficial raises several issues which may be succinctly stated as one:

Whether the trial court's findings of fact and conclusions of law were supported by the evidence.

1. The Powers' home was sold prior to trial. Pursuant to a stipulation of the parties, a portion of the sale price in excess of the first

## DISCUSSION AND DECISION

■ Beneficial appeals a negative judgment. To be successful, Beneficial must establish that the judgment is contrary to law. *Sherk v. Indiana Waste Systems, Inc.* (1986), Ind.App., 495 N.E.2d 815, *trans. denied.* This court will set aside a negative judgment as contrary to law only when the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one result and the trial court has reached a different one. *Charles F. Broughton, D.M.D., P.C. v. Riehle* (1987), Ind.App., 512 N.E.2d 1133. This court, in considering only the evidence most favorable to the judgment, will not reweigh the evidence or judge the credibility of the witnesses. *Maddox v. Wright* (1986), Ind.App., 489 N.E.2d 133. Where a party bearing the burden of proof receives a negative judgment, it will not be disturbed as long as any evidence or reasonable inferences arising therefrom support the judgment. *Brand v. Monumental Life Ins. Co.* (1981), 275 Ind. 308, 417 N.E.2d 297. Any conflicts in the evidence must be resolved by the trier of fact. *Id.* The specific findings and conclusions of the trial court will be affirmed unless clearly erroneous. *Jay School Corp. v. Cheeseman* (1989), Ind.App., 540 N.E.2d 1248, *trans. denied.*

Beneficial contends the trial court's findings and conclusions regarding whether Constance ratified Donald's actions were not supported by the evidence. Specifically, Beneficial assigns the following finding and conclusions as error:

[Finding] 17. That [Constance] never acknowledged the mortgage or note sued upon nor did she derive any benefit therefrom. That there was no evidence of extravagant spending for clothing, trips, automobiles, furniture, etc. In fact the deceit of Donald J.B. Powers was shown by his purchase of a "diamond" ring that turned out to be a zircon.

mortgage was placed in an escrow account. After trial, the account was released to Constance.

[Conclusion] 7. That [Constance] never acknowledged the mortgage and/or note sued upon nor did she ratify her deceased husband's criminal act of forgery.

[Conclusion] 10. That [Constance] did not sign nor consent, appoint her deceased husband as agent, either expressly or impliedly nor ratify, her husband's forgery of her signature to the note and mortgage sued upon.

*Record* at 304; 309.

■ Beneficial maintains that although no agency relationship existed between Constance and Donald, she nonetheless ratified his unauthorized acts. While we agree with Beneficial's assertion that an agency relationship is not a prerequisite for ratification, *Lichtenberger v. Graham* (1875), 50 Ind. 288, we agree with the trial court's finding that Constance did not ratify Donald's unauthorized acts.

■ Ratification is a question of fact and is defined as "the adoption of that which was done for and in the name of another without authority." *State ex rel. Guaranty Bldg. and Loan Co. v. Wiley* (1935), 100 Ind.App. 438, 441, 196 N.E. 153, 154. Knowledge of all the material facts by the person to be charged with the unauthorized acts of another is an indispensable element of ratification. *See Allegheny Mut. Casualty Co. v. Franklin* (1987), Ind. App., 513 N.E.2d 658, 659 ("A principal's knowledge of all material facts is indispensable to ratification of an agent's unauthorized acts."). A ratification does not occur unless it appears that the act was performed for and on behalf of another, and not on account of the actor himself. *Bryan v. Pommert* (1941), 110 Ind.App. 61, 37 N.E.2d 720. One may ratify another's unauthorized acts through silence and acceptance of the benefits attaching to such acts. *Wright v. State* (1977), 266 Ind. 327, 363 N.E.2d 1221 (citing 1 I.L.E. *Agency* § 121 et seq. (1957)).

■ Beneficial contends that Constance's intent to ratify Donald's unauthorized acts was evidenced by the fact that she knew of Donald's acts three and one-half to six weeks prior to his death and the fact she admitted that upon gaining such knowledge she insisted on selling the couple's home to satisfy Donald's debts. There was further testimony, however, that Constance thought she was required to attend to Donald's financial obligations because she was married to him. Furthermore, within nine days of Donald's death, Constance retained legal counsel and disavowed the note and mortgage.

The trial court was presented with conflicting evidence on the issue of Constance's purported ratification of Donald's unauthorized acts. It was reasonable for the trial court to infer from the evidence presented that Constance did not ratify Donald's unauthorized act of signing her name to the additional mortgages. Without reweighing the evidence or judging the credibility of the witnesses, we find the trial court properly found that Constance did not authorize or ratify Donald's acts.

Similarly, we reject Beneficial's argument that the trial court's finding relating to whether Constance derived any benefit from Donald's unauthorized acts was unsupported by the evidence. Beneficial presents an elaborate argument in its brief, complete with mathematical computations, as to how it perceives the loan proceeds were most assuredly used by the Powers. Beneficial is essentially rearguing the evidence on appeal and inviting this court to reweigh the evidence. We decline the invitation. As the trial court correctly pointed out, there is no evidence to support any extravagant spending that might have benefited Constance. We find no merit in Beneficial's argument that the evidence conclusively leads to a contrary result.

■ Beneficial next contends the trial court's following finding and related conclusion were not supported by the evidence:

[Finding] 29. That James Goodwin as a servant, agent and employee of Beneficial and who is and was the manager of the branch of Beneficial handling the transactions in question and all prior transactions undertaken on behalf of Beneficial with the said Donald J.B. Powers, deceased, knew or should have

known of the scheme of Donald J.B. Powers, deceased; and particularly, that [Constance] did not execute either the "Beneficial Credit Line Agreement" (Plaintiff's Exhibit No. 3) or the Real Estate Mortgage (Plaintiff's Exhibit No. 2) which are the basis for the claim being made in this action as demonstrated by:

(a) The testimony of Wilma Stevens that Donald J.B. Powers, deceased, believed that the Beneficial loan officer knew his financial schemes, including his forging of the signatures purported to be that of [Constance], his wife.

(b) The reasonable inference from the facts and circumstances surrounding the transactions between Beneficial and Donald J.B. Powers, deceased, and including the "confidential" manner in which all of said transactions were handled and the complete absence of any participation therein by [Constance].

[Conclusion] 14. That the plaintiff had entered into the commercial transaction in question with knowledge of the circumstances which caused the loss for which the plaintiff seeks to recover and did thereby assume and/or incur the risk of the loss for which the plaintiff seeks to recover.

*Record* at 307–08; 310. Beneficial argues that the trial court was in error because James Goodwin, Beneficial's manager, testified that he had no suspicion concerning the genuineness of Constance's signature. Beneficial is once again inviting this court to reweigh the evidence. We again refuse the invitation.

The record reflects that Beneficial did not once, in four instances, confirm Constance's participation in Donald's application for an additional mortgage. Furthermore, Beneficial knew that the confidential designation of the loans ensured that no notice of the transactions would be forwarded to Constance's residence. Wilma Stevens, a close family friend, testified that Donald told her he thought the loan officer knew of his forgeries. There is ample evidence in the record to support the trial court's finding that Beneficial knew or had reason to know of Donald's unauthorized acts.

The same evidence that supports the trial court's findings concerning Beneficial's actual or constructive knowledge of Donald's unauthorized acts also supports its findings with respect to Beneficial's equitable posture in bringing its actions against Constance and notary Young. On this issue, the trial court made the following findings of fact and conclusions of law:

[Finding] 19. That the knowledge and conduct of the servants, agents and employees of Beneficial in handling the transactions with Donald J.B. Powers, deceased, and particularly, that of April 1, 1987, was such that:

(a) The conduct of Young was not the proximate cause of the claimed losses of Beneficial.

(b) The negligent conduct of Beneficial constituted the proximate cause or a contributing cause of any loss of Beneficial, and

(c) Beneficial assumed and/or incurred the risk of any and all loss occurring as a result of said transaction.

[Finding] 20. That the conduct of the servants, agents, and employees of Beneficial with respect to the handling of the transaction with Donald J.B. Powers, deceased, and particularly, that of April 1, 1987, and the continued conduct of the servants, agents and employees of Beneficial since the date of the transaction was such that Beneficial:

(a) Did not act in good faith with respect to the commercial transaction in issue and/or;

(b) Did not bring Beneficial before the Court with clean hands, and as a result of which Beneficial is estopped and/or not entitled to any requested equitable relief from the defendant, Young.

[Conclusion] 13. That the alleged conduct of the plaintiff with respect to the loan transaction in question was negligent and said negligence proximately caused or contributed to cause the plaintiff's damages.

[Conclusion] 15. The plaintiff did not act in good faith with respect to the commercial transaction in question and is

thereby estopped to recover for the losses sought by this action.

[Conclusion] 16. That [the] conduct of the plaintiff with respect to all of the transactions of the plaintiff with the said Donald J.B. Powers, deceased, including those before and following the transaction in question do not bring the plaintiff before this Court with clean hands and which would entitle the plaintiff to any equitable relief that may be sought by this action.

*Record* at 305; 309–10.

■ Foreclosure lies solely within the equitable discretion of the trial court. *Dorothy Edwards Realtors, Inc. v. McAdams* (1988), Ind.App., 525 N.E.2d 1248. It is well settled that he who seeks equity, must do equity. *Alber v. Standard Heating & Air Conditioning, Inc.* (1985), Ind.App., 476 N.E.2d 507. A party seeking equitable relief must come before the court with clean hands. *Id.* "A plaintiff cannot seek relief against the wrong of another where he himself has engaged in the same wrong or a wrong with reference to the same matter." *McKechnie v. McDermott* (N.D. Ind.1984), 595 F.Supp. 672, 676.

■ Beneficial had every opportunity to investigate Constance's purported signature. Beneficial participated in the questionable manner in which the documents were executed by filling in the notary information and by failing to confirm Donald's explanations for his wife's repeated absences. The circumstances surrounding the loan transactions were questionable. The evidence before the trial court concerning Beneficial's conduct during the loan transactions was sufficient to justify the trial court's finding. Beneficial may not conduct itself in the manner it did during the loan transactions and then expect equitable relief from the trial court. The denial of Beneficial's mortgage foreclosure action was proper.

■ Beneficial also argues the trial court erred in failing to find notary Young was at least negligent. "In order to recover on a theory of negligence, a plaintiff must establish that the defendant owed him a duty, that the defendant breached that duty, and that said breach proximately resulted in injury or loss for which damages are sought." *Flott v. Cates* (1988), Ind.App., 528 N.E.2d 847, 848. The trial court found that Young's conduct in acknowledging Constance's signature did not proximately cause Beneficial's loss. Rather, it was Beneficial's conduct when dealing with Donald in the loan transactions that caused its own loss. We have already discussed Beneficial's conduct in our discussion of the applicable equitable principles. This conduct, as evidenced in the record, is sufficient to uphold the trial court's determination that Young's conduct was not the proximate cause of Beneficial's loss.

■ Beneficial finally contends there was no evidence to support the trial court's findings on the issue of Beneficial's reliance on Young's acknowledgement of Constance's purported signature. The trial court found as follows:

[Finding] 18. That James Goodwin as a servant, agent and employee of Beneficial and on behalf of Beneficial and Beneficial did not rely upon the alleged notarization of the signature of [Constance] on the Real Estate Mortgage which is Plaintiff's Exhibit No. 2 carrying the date of April 1, 1987, as demonstrated by, among other things:

(a) The alleged notarization took place on April 3, 1987, which is two (2) days after the effective date of the "Beneficial Credit Line Account Agreement" which is Plaintiff's Exhibit No. 3.

(b) His own testimony in person at trial and by deposition that after receipt of the initial notarization of a Real Estate Mortgage not notarized by Young and which is Plaintiff's Exhibit No. 10 that he relied upon the signatures contained thereon as to all subsequent signature verifications.

(c) Notice of Right to Cancel, Plaintiff's Exhibit No. 4, shows the date of the agreement to be April 1, 1987, with the three (3) day cancellation privilege expiring April 4, 1987.

(d) Account Record Card, Plaintiff's Exhibit No. 7, showing the date of the agreement to be April 1, 1987.

[Finding] 22. That Young did not purport to act as notary on said Real Estate Mortgage (Plaintiff's Exhibit No. 10), as another Notary Public acknowledged the execution of said document purportedly by Donald J.B. Powers and [Constance]. That with respect to the conduct of Beneficial and any documents executed by or on behalf of Donald J.B. Powers, deceased, and/or [Constance] subsequent to the execution of Plaintiff's Exhibit No. 10 Beneficial relied upon the signatures contained on said Real Estate Mortgage which was executed before a Notary Public other than the defendant Young as comparison signatures.

[Conclusion] 17. That the plaintiff did not and could not rely upon the attempted notarization of the Real Estate Mortgage dated April 1, 1987, but which was not the subject of any attempted notarization until April 3, 1987, in entering into the Beneficial Credit Line Agreement on April 1, 1987.

*Record* at 304–06; 310. Beneficial's brief presents us with a reargument of the evidence. We will not reweigh the evidence or judge the credibility of the witnesses. The record contains sufficient evidence to support the trial court's findings on this issue.

Judgment affirmed.

SHIELDS, P.J., and ROBERTSON, J., concur.