Floyd H. Eades and Faye Eades, Petitioners v.
Commissioner of Internal Revenue, Respondent

Docket No. 2093–81.     Filed December 8, 1982.

*Jack F. Hardin*, for the petitioners.
*Juan F. Vasquez*, for the respondent.

OPINION

Hamblen, *Judge*: Respondent determined a deficiency of
$1,027 in petitioners' 1977 Federal income tax. The sole issue
for decision is whether petitioners' net earnings from self-
employment under section 1402(a)[1] are reduced by amounts
deposited in a capital construction fund established pursuant
to section 607 of the Merchant Marine Act, 1936, 46 U.S.C. sec.
1177 (1976) (hereinafter the MMA).

All of the facts have been stipulated and are found accord-
ingly.

Floyd H. Eades (hereinafter petitioner) and Faye Eades,
husband and wife, resided in Kemah, Tex., when they filed
their 1977 joint Federal income tax return with the Internal
Revenue Service Center, Austin, Tex., and when they filed
their petition in this case.

Petitioner was self-employed as a fisherman during 1977. On
May 11, 1977, petitioner entered into an agreement with the
Secretary of Commerce to establish a capital construction fund
under section 607 of the MMA. During 1977, petitioner had a
net profit of $13,000 from his fishing business which he
deposited into the capital construction fund.

On his 1977 tax return, petitioner reported a net profit of
$13,000 from his fishing business, but reduced his taxable
income by the same amount under section 607(d)(1) of the

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of
1954 as amended and in effect for the year in issue.

MMA, due to his deposit of $13,000 into the capital construction fund. Petitioner did not report any self-employment tax on the net profit from his fishing business. In the notice of deficiency, respondent determined that the amount which petitioner deposited into the capital construction fund only reduced petitioner's taxable income and not his net earnings from self-employment and, therefore, petitioner was liable for the self-employment tax on the net profit from his fishing business.

Section 607(d)(1)(A) of the MMA provides that "taxable income" shall be reduced by the amount of the taxable income deposited in the capital construction fund for the taxable year. Pursuant to section 1401, a tax is imposed on the self-employment income of every individual. Section 1402(b) defines the term "self-employment income" as the "net earnings from self-employment," which is defined as follows under section 1402(a):

The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business * * *

Respondent maintains that petitioner's deposits into the capital construction fund do not reduce his earnings from self-employment because section 607(d)(1)(A) of the MMA only provides for a reduction of "taxable income" as that term is used in chapter 1 of subtitle A of the Internal Revenue Code of 1954.[2] Petitioner, on the other hand, argues that the term "taxable income" as used in section 607(d)(1)(A) of the MMA was not meant to be interpreted in this manner. According to petitioner, Congress did not intend to include amounts deposited into a capital construction fund in gross income for purposes of computing the net earnings from self-employment, but only intended to limit the amount excludable from gross income to the amount of the taxpayer's taxable income. For the reasons set forth below, we hold for respondent.

Congress enacted the MMA in 1936 in order to foster the development and encourage the maintenance of an American merchant marine that could adequately serve the defense and

---

[2]Respondent's position is fully set forth in Rev. Rul. 79–413, 1979–2 C.B. 309.

commercial needs of the United States. Section 607 of the MMA, as originally enacted, required certain subsidized American shipping operators in the foreign commerce of the United States to establish and make deposits into a capital reserve fund and a special reserve fund. While section 607(f) of the MMA, Pub. L. 74–835, 49 Stat. 2007 (1936), provided that earnings deposited into these funds were "exempt from all Federal taxes," it appears that Congress only intended to provide a deferral of taxes and not a permanent exemption. In any event, the law was administered through closing agreements between the shipping operators and the Internal Revenue Service, whereby a deferral of taxes was effected. See H. Rept. 91–1073 (1970), and S. Rept. 91–1080 (1970), to accompany H. R. 15424 (Merchant Marine Act of 1970, Pub. L. 91–469, 84 Stat. 1018).

Pursuant to the Merchant Marine Act of 1970, *supra,* Congress amended the MMA in an attempt to revitalize the U.S. merchant marine through the improvement and expansion of the programs provided in the MMA. Section 607 of the MMA was expanded to make "a tax deferred reserve fund" available to both unsubsidized and subsidized shipping operations in U.S. foreign trade and certain other types of trade. H. Rept. 91–1073, *supra* at 43; S. Rept. 91–1080, *supra* at 39. Section 607 of the MMA, as originally enacted, could be administered through closing agreements because it was used by a small number of taxpayers. Since the Merchant Marine Act of 1970 greatly expanded the tax deferral privilege, the legislation provided "a more specific statutory framework for determining the tax status of deposits into and withdrawals from the fund." H. Rept. 91–1073, *supra* at 47; S. Rept. 91–1080, *supra* at 43–44. Congress intended this statutory framework to "have the effect of deferring tax on ordinary income or capital gains on these deposits so long as they remain in the fund or are used for purposes for which the fund is being maintained." H. Rept. 91–1073, *supra* at 50; S. Rept. 91–1080, *supra* at 47.

We now turn to the statutory framework of the tax deferral provided pursuant to section 607 of the MMA. Section 607(a) of the MMA provides that "Any citizen of the United States owning or leasing one or more eligible vessels * * * may enter into an agreement with the Secretary of Commerce under, and

as provided in, this section to establish a capital construction fund * * * with respect to any or all of such vessels." Any such agreements must be for the purpose of providing replacement vessels, additional vessels, or reconstructed vessels, subject to certain limitations that are not relevant to the instant case, and must provide for deposits into the fund of agreed-upon amounts to the extent necessary for qualified withdrawals under section 607(f) of the MMA. All deposits into the fund and withdrawals therefrom, whether qualified or nonqualified, are subject to the conditions and requirements set forth in the agreement and regulations prescribed by the Secretary of Commerce, except that the Secretary of Commerce may not require any person to deposit more than 50 percent of his taxable income (as computed under section 607(b)(1)(A) of the MMA) which is attributable to the operation of vessels encompassed by the terms of the agreement.

Section 607(b)[3] of the MMA sets a ceiling on amounts which may be deposited into the fund, stating in pertinent part:

(b)(1) The amount deposited under subsection (a) of this section in the fund for any taxable year shall not exceed the sum of:

(A) that portion of the taxable income of the owner or lessee for such year (computed as provided in chapter 1 of the Internal Revenue Code of 1954 but without regard to the carryback of any net operating loss or net capital loss and without regard to this section) which is attributable to the operation of

---

[3]Sec. 607(b) of the MMA provides:

(b)(1) The amount deposited under subsection (a) of this section in the fund for any taxable year shall not exceed the sum of:

(A) that portion of the taxable income of the owner or lessee for such year (computed as provided in chapter 1 of the Internal Revenue Code of 1954 but without regard to the carryback of any net operating loss or net capital loss and without regard to this section) which is attributable to the operation of the agreement vessels in the foreign or domestic commerce of the United States or in the fisheries of the United States,

(B) the amount allowable as a deduction under section 167 of the Internal Revenue Code of 1954 for such year with respect to the agreement vessels,

(C) if the transaction is not taken into account for purposes of subparagraph (A), the net proceeds (as defined in joint regulations) from (i) the sale or other disposition of any agreement vessel, or (ii) insurance or indemnity attributable to any agreement vessel, and

(D) the receipts from the investment or reinvestment of amounts held in such fund.

(2) In the case of a lessee, the maximum amount which may be deposited with respect to an agreement vessel by reason of paragraph (1)(B) for any period shall be reduced by any amount which, under an agreement entered into under this section, the owner is required or permitted to deposit for such period with respect to such vessel by reason of paragraph (1)(B).

(3) For purposes of paragraph (1), the term "agreement vessel" includes barges and containers which are part of the complement of such vessel and which are provided for in the agreement.

the agreement vessels in the foreign or domestic commerce of the United States or in the fisheries of the United States, * * *

Section 607(c) of the MMA places restrictions on where the assets in the fund may be deposited and how they may be invested. Section 607(d)[4] of the MMA provides for the nontaxability of amounts deposited into the fund and earnings of the fund, itself, stating to the extent relevant herein:

(d)(1) For purposes of the Internal Revenue Code of 1954—

(A) taxable income (determined without regard to this section) for the taxable year shall be reduced by an amount equal to the amount deposited for the taxable year out of amounts referred to in subsection (b)(1)(A), * * *

Pursuant to section 607(e) of the MMA, three accounts must be maintained within the capital construction fund: (1) The capital account which consists of amounts that would have been excludable or deductible in any event; (2) the capital gain account which consists of the amounts that would have otherwise been taxable as long-term capital gain; and (3) the ordinary income account which consists of amounts that would have otherwise been taxable as ordinary income or short-term capital gain. Section 607(f) of the MMA defines a qualified withdrawal from the fund as one made in accordance with the terms of the agreement establishing the fund, but only if the withdrawal is for one of the purposes stated in that subsection. Section 607(g) of the MMA sets forth the tax treatment of qualified withdrawals from the fund, providing, in general, that the basis of a new or rebuilt vessel, barge, or container for

---

[4]Sec. 607(d) of the MMA provides:

(d)(1) For purposes of the Internal Revenue Code of 1954—

(A) taxable income (determined without regard to this section) for the taxable year shall be reduced by an amount equal to the amount deposited for the taxable year out of amounts referred to in subsection (b)(1)(A) of this section,

(B) gain from a transaction referred to in subsection (b)(1)(C) of this section shall not be taken into account if an amount equal to the net proceeds (as defined in joint regulations) from such transaction is deposited in the fund,

(C) the earnings (including gains and losses) from the investment and reinvestment of amounts held in the fund shall not be taken into account,

(D) the earnings and profits of any corporation (within the meaning of section 316 of such Code) shall be determined without regard to this section, and

(E) in applying the tax imposed by section 531 of such Code (relating to the accumulated earnings tax), amounts while held in the fund shall not be taken into account.

(2) Paragraph (1) shall apply with respect to any amount only if such amount is deposited in the fund pursuant to the agreement and not later than the time provided in joint regulations.

which the withdrawal is made shall be reduced by an amount which reflects the tax benefit, if any, that the taxpayer received under section 607(d) of the MMA when he deposited the amount withdrawn. Finally, section 607(h)[5] of the MMA sets forth the tax treatment of withdrawals that are not qualified withdrawals, that is, nonqualified withdrawals. A nonqualified withdrawal is treated as made out of the three accounts maintained within the fund in the following order: (1) The ordinary income account; (2) the capital gain account; and (3) the capital account. Any nonqualified withdrawal is taxed in the year withdrawn according to the type of account from

---

[5]Sec. 607(h) of the MMA provides:

(h)(1) Except as provided in subsection (i) of this section, any withdrawal from a fund which is not a qualified withdrawal shall be treated as a nonqualified withdrawal.

(2) Any nonqualified withdrawal from a fund shall be treated—

(A) first as made out of the ordinary income account,

(B) second as made out of the capital gain account, and

(C) third as made out of the capital account.

For purposes of this section, items withdrawn from any account shall be treated as withdrawn on a first-in-first-out basis; except that (i) any nonqualified withdrawal for research, development, and design expenses incident to new and advanced ship design, machinery and equipment, and (ii) any amount treated as a nonqualified withdrawal under the second sentence of subsection (g)(4) of this section, shall be treated as withdrawn on a last-in-first-out basis.

(3) For purposes of the Internal Revenue Code of 1954—

(A) any amount referred to in paragraph (2)(A) shall be included in income as an item of ordinary income for the taxable year in which the withdrawal is made,

(B) any amount referred to in paragraph (2)(B) shall be included in income for the taxable year in which the withdrawal is made as an item of gain realized during such year from the disposition of an asset held for more than 6 months, and

(C) for the period on or before the last date prescribed for payment of tax for the taxable year in which this withdrawal is made—

(i) no interest shall be payable under section 6601 of such Code and no addition to the tax shall be payable under section 6651 of such Code,

(ii) interest on the amount of the additional tax attributable to any item referred to in subparagraph (A) or (B) shall be paid at the applicable rate (as defined in paragraph (4)) from the last date prescribed for payment of the tax for the taxable year for which such item was deposited in the fund, and

(iii) no interest shall be payable on amounts referred to in clauses (i) and (ii) of paragraph (2) or in the case of any nonqualified withdrawal arising from the application of the recapture provision of section 1176(5) of this title as in effect on December 31, 1969.

(4) For purposes of paragraph (3)(C)(ii), the applicable rate of interest for any nonqualified withdrawal—

(A) made in a taxable year beginning in 1970 or 1971 is 8 percent, or

(B) made in a taxable year beginning after 1971, shall be determined and published jointly by the Secretary of the Treasury and the Secretary of Commerce and shall bear a relationship to 8 percent which the Secretaries determine under joint regulations to be comparable to the relationship which the money rates and investment yields for the calendar year immediately preceding the beginning of the taxable year bear to the money rates and investment yields for the calendar year 1970.

which the withdrawal is made, with interest from the last date prescribed for the payment of the tax for the taxable year in which the amount withdrawn was deposited into the fund.

Respondent's position is supported by the clear language of section 607(d)(1)(A) of the MMA. It provides that amounts deposited into a capital construction fund shall reduce *taxable income*. We are convinced that Congress was referring to taxable income as that term is defined under chapter 1 of subtitle A of the Internal Revenue Code of 1954. Section 607(b)(1)(A) of the MMA specifically provides that taxable income, with certain modifications, is to be computed as provided in chapter 1 of the Internal Revenue Code of 1954. Under section 607(d)(1)(A) of the MMA, a parenthetical reference specifies that taxable income as used in that subsection is to be "determined without regard to this section," that is, section 607 of the MMA. Obviously, this reference means that Congress intended taxable income for purposes of section 607(d)(1)(A) to be determined under chapter 1 of the Internal Revenue Code of 1954. This conclusion is inescapable in light of the reference to chapter 1 contained in section 607(b)(1)(A) of the MMA.

The Internal Revenue Code of 1954 defines "taxable income" for individuals as the adjusted gross income less the excess itemized deductions and the deduction for personal exemptions. Sec. 63(b). On the other hand, section 1402(a) defines net earnings from self-employment as the gross income derived by an individual from any trade or business less the deductions allowed by subtitle A which are attributable to such trade or business.[6] Consequently, the literal language of section 607(d)(1)(A) of the MMA does not allow petitioner to reduce his net earnings from self-employment by the amount that he deposited into the capital construction fund for the year in issue.

Nevertheless, petitioner argues that section 607 of the MMA, as originally enacted, provided that deposits into the fund were exempt from all Federal taxes and that the 1970 amendment of section 607 of the MMA was only intended to

---

[6]Sec. 1402(a) also requires certain adjustments in the computation of gross income and the deductions allowed by subtitle A for purposes of determining an individual's net earnings from self-employment.

implement a deferral of all Federal taxes and not to make deposits into the fund subject to the self-employment tax. We have carefully considered the legislative history of the Merchant Marine Act of 1970, *supra*, however, and find it unlikely that Congress ever considered whether deposits into a capital construction fund established pursuant to section 607 of the MMA should be subject to the self-employment tax.

When Congress originally enacted the MMA, the self-employment tax did not even exist. The self-employment tax was enacted pursuant to the Social Security Act Amendments of 1950, ch. 809, 64 Stat. 477, 1950–2 C.B. 217. Congress enacted the self-employment tax in order to extend social security coverage to self-employed individuals. See generally H. Rept. 1300, 81st Cong., 1st Sess. (1949), 1950–2 C.B. 255; S. Rept. 1669, 81st Cong., 2d Sess. (1950), 1950–2 C.B. 302. "[I]n the interests of simplicity for taxpayers and economy in administration," the Senate Finance Committee report states that the self-employment tax should be administered in all particulars as an integral part of the income tax. S. Rept. 1669, *supra* at 153, 1950–2 C.B. at 353. Although the self-employment tax is generally considered an income tax and the legislative history of the Merchant Marine Act of 1970, *supra*, does state that Congress intended to defer the imposition of "income taxes" on earnings deposited into a capital construction fund, we do not believe that Congress ever intended the deferral provided by section 607 of the MMA to apply to the self-employment tax.[7]

First, the above-quoted legislative history of the Merchant

---

[7] In Rev. Rul. 82–185, 1982–44 I.R.B. 8, the Internal Revenue Service determined that the period of limitation for assessment of the self-employment tax began running upon the filing of a Form 1040 that fully reported income even though no self-employment tax was reported thereon. In so doing, the Service noted the legislative history stating that the self-employment tax should be administered as an integral part of the income tax and emphasized that "self-employment taxes are not separate and distinct from individual income taxes." Although we agree with this statement, especially with respect to the administration of such taxes, we do not think that Congress meant to refer to the self-employment tax when it stated that sec. 607 of the MMA would provide a deferral of *income taxes*. While the self-employment tax is technically an income tax, it is also closely associated with the social security tax. Furthermore, the self-employment tax and the individual income tax are computed differently; the self-employment tax is a flat tax that is only levied upon the net earnings from self-employment that do not exceed the social security contribution and benefit base. See sec. 1402(b). Consequently, the self-employment tax and the individual income tax are distinct taxes in the sense that they are computed differently and serve different purposes. Moreover, for the reasons stated in the text, *infra*, we simply do not believe that Congress intended sec. 607 of the MMA to apply to the self-employment tax.

Marine Act of 1970 exhibits the clear congressional intent to allow a deferral of the ordinary income tax and capital gains tax (terms that are commonly associated with the income tax imposed pursuant to chapter 1 of subtitle A of the Internal Revenue Code of 1954) on amounts deposited into a capital construction fund, but the self-employment tax is never mentioned. Second, the deferral mechanism provided by Congress in section 607 of the MMA does not effectively implement a deferral with respect to the self-employment tax. For example, assuming the deposits into the fund reduced net earnings from self-employment, an individual who has taxable income and net earnings from self-employment that equal the social security contributions and benefit base[8] for a number of successive years, all of which he deposits into the capital construction fund, would avoid, at least temporarily, the normal individual income taxes and self-employment taxes on such deposits. If, in a subsequent year, he made a nonqualified withdrawal of all of such deposits, the deferral mechanism of section 607 of the MMA would apply the normal individual taxes under section 1 to the full amount of the withdrawal, but the amount of the withdrawal in excess of the social security contribution and benefit base would escape the self-employment tax which would have otherwise applied thereto in the year the deposits were made.

Moreover, while the self-employment tax is administered as a part of the income tax, its purpose is to provide social security coverage to self-employed individuals. It appears to us that Congress did not even consider the application of section 607 of the MMA in the context of the self-employment tax. Since the legislative history of the MMA, however, makes it abundantly clear that Congress intended section 607 of the MMA to provide only a deferral of taxes, we must conclude that Congress, if it had considered this matter, would not have allowed this provision to apply to the self-employment tax. To hold otherwise would undermine the congressional purpose underlying the self-employment tax. We do not think that the

[8]Sec. 1402(b) defines self-employment income as the "net earnings from self-employment," but states that such term does not include that part of the net earnings from self-employment which is in excess of an amount equal to the contribution and benefit base as determined under sec. 230 of the Social Security Act.

policy considerations underlying the MMA are entitled to any greater weight than those underlying the Social Security Amendments of 1950.

Finally, petitioner argues that the reduction provided by section 607(b)(1)(A) of the MMA constitutes an exclusion from gross income under subtitle A of the Internal Revenue Code of 1954 pursuant to section 124(a)(5) which provides a cross-reference to section 607(d) of the MMA.[9] Therefore, petitioner asserts that the reduction provided by section 607(d) of the MMA is excluded from the computation of the net earnings from self-employment under section 1.1402(a)–2(a), Income Tax Regs., which excludes from such computation amounts excludable from gross income under any provision of subtitle A of the Internal Revenue Code of 1954. Pursuant to section 7806(a), however, cross-references are made only for convenience and cannot be given any substantive legal effect. Consequently, the reduction provided in section 607(d) of the MMA cannot be considered an exclusion pursuant to subtitle A of the Internal Revenue Code of 1954, and, therefore, we reject petitioner's argument.[10]

In conclusion, the language Congress used is clear and we cannot ignore it to reach a different result:

Unless the language of the statute is plainly at variance with the legislative policy, we cannot look beyond the normal meaning of the words chosen by Congress. We cannot depart from the statutory language to effectuate what we may merely surmise was the congressional purpose. [*Busse v. Commissioner*, 58 T.C. 389, 392 (1972), affd. 479 F.2d 1147 (7th Cir. 1973).]

See also *Zuanich v. Commissioner*, 77 T.C. 428 (1981), on appeal (9th Cir., Nov. 13, 1981). We cannot find that Congress intended the term "taxable income" as used in the Internal Revenue Code of 1954, to have a different meaning for purposes of section 607(d)(1)(A) of the MMA. Cf. *Zuanich v. Commissioner, supra* at 443 (the term "basis" was held to have

---

[9]At present, this cross-reference is set forth in sec. 130(a)(4).

[10]In support of his position, petitioner has relied on *Pacific Transport Co. v. Commissioner*, T.C. Memo. 1970–41, vacated and remanded on another issue 483 F.2d 209 (9th Cir. 1973). Such reliance, however, is misplaced. See *Meridian Mutual Insurance Co. v. Commissioner*, 44 T.C. 375, 379 (1965), affd. 369 F.2d 508 (7th Cir. 1966). See also *George Edward Quick Trust v. Commissioner*, 54 T.C. 1336, 1344 n. 13 (1970), affd. 444 F.2d 90 (8th Cir. 1971).

the same meaning for both section 607(g)(2) of the MMA and section 46(c)(1)(A)). Accordingly, we hold for respondent.

To reflect the foregoing,

*Decision will be entered for the respondent.*