Kenneth E. KOCH, Appellant–
Respondent,

v.

Betty M. JAMES, Personal Representa-
tive of the Estates of Ralph J. Koch,
Deceased, and Amelia E. Koch, De-
ceased, Appellee–Petitioner.

No. 82A01–9212–CV–405.

Court of Appeals of Indiana,
First District.

June 28, 1993.

Rehearing Denied Aug. 23, 1993.

Reed S. Schmitt, Frick, Powell Whinrey, Cravens & Schmitt, Evansville, for appellant-respondent.

Jack N. Vanstone, Evansville, for appellee Estate of Amelia E. Koch.

William H. Bender, Allyn, Givens & Bender, Poseyville, for appellee Estate of Ralph J. Koch.

BAKER, Judge.

We are confronted today with the question of whether the intent of two testators is executed by a judicial sale of securities ordered to satisfy the estates' obligations. This appeal consolidates two estate cases involving sales of stock in the same close corporation.[1] The personal representative of the estates, Betty James, obtained a court order to sell the stock and is the appellee-petitioner. Kenneth Koch, the appellant-respondent, filed this interlocutory appeal contending the sales do not effectuate the testators' intent. We reverse and remand.

## FACTS

Kenneth and Ralph E. Koch are the beneficiaries of stock owned by their parents in Center Heights Lumber Co., a closely held family corporation. The parents, Ralph J. and Amelia Koch, died within two weeks of each other in the summer of 1991. At their deaths, Ralph J. owned 135 shares of stock, and Amelia owned 57 shares. Kenneth and Ralph E. owned 40 shares and 24 shares, respectively. Kenneth also operated the lumber company. Because of animosity between the brothers, Ralph E. chose not to participate in the lumber company. The parents specifically bequeathed their stock in equal shares to their two sons. Both left the residue of their estates to satisfy their debts and any remainder of the residue to their daughter, Betty James.

Because James believed the residue of the estates was insufficient to pay the expenses, she petitioned the court for an order to sell the primary assets—the stock. Kenneth, actively engaged in the business operations and being the majority shareholder, opposed the sales. After hearings debating the value of the stock, the court entered specific findings of fact and conclusions of law ordering sales of the stock. Kenneth appeals.

## DISCUSSION AND DECISION [2]

### Interlocutory Appeal

Initially, we consider Amelia's estate's contention that the trial court's orders may not be appealed interlocutorily under Ind. Appellate Rule 4(B), which lists interlocutory appeals by right. Kenneth argues the appeal meets App.R. 4(B)(1), which provides: "appeal from interlocutory orders shall be taken to the Court of Appeals in the following cases:

(1) ... the delivery or assignment of any securities...." We agree with Kenneth's interpretation of App.R. 4(B)(1) on this question of first impression of whether a judicial sale of securities constitutes a delivery or assignment of the securities.

Delivery is defined as "the act by which the res or substance thereof is placed within the actual or constructive possession or control of another." *Black's Law Dictionary* 385 (5th ed. 1979). An interlocutory appeal is permitted when there is a delivery of securities because a shift of control occurs which may result in material changes that could not be remedied by a later appeal. A judicial sale shifts control of the securities and requires a change in possession. We find "delivery" encompasses a

---

1. Because this is a consolidated appeal, two sets of records exist, which we differentiate as Ralph's *Record* and Amelia's *Record.*

2. We note the appellant's briefs should have been filed on February 15, 1992. Although February 15 was President's Day, the clerk's office

judicial sale of securities and is grounds for an interlocutory appeal. We conclude the court's orders to sell the estates' stock are interlocutorily appealable by right under App.R. 4(B)(1).[3]

### Standard of Review

[2–4] Next, we must determine the appropriate standard of appellate review. Following Kenneth's request, the trial court entered findings of fact and conclusions of law regarding the sales in both estates. When specific findings have been issued, the appellate court cannot set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). We first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* The trial court's findings are clearly erroneous if the record is devoid of any facts or reasonable inferences to support them. *Id.* We consider only the evidence most favorable to the judgment and the reasonable inferences therefrom without reweighing the evidence or reassessing witness credibility. *Id.* at 666.

### Evidence of Estate Expenses

[5] Kenneth contends the evidence fails to support the court's order of sale. James' petitions for sale of securities in each estate both state:

> The Executrix has evaluated the decedent's estate, ... and has concluded it necessary for the shares to be sold for the following purposes, pursuant to I.C. 29-1-15-3: a) payment of expenses of administration, b) payment of estate and inheritance taxes, c) equitable distribution of the estate, d) and promoting the best interests of the estate.

Ralph's *Record* at 82; Amelia's *Record* at 108. Kenneth contends James did not present any evidence of the specific amounts of the decedents' debts, administration expenses, or the amounts of taxes owed. However, Kenneth did not present this ar-gument to the trial court, and thereby conceded the issue. Regarding Amelia's estate, Kenneth stated in his "Objection to Petition for Sale of Closely Held Common Shares and Request for Distribution" that:

> Although the Personal Representative has failed to set forth the amount of the expenses of administration and the amount of inheritance taxes due, it appears that the expenses of administration and the amount of inheritance taxes due in the estate are well below the amount of residuary assets comprising the estate.

Amelia's *Record* at 124. Regarding Ralph's estate, Kenneth conceded the estate was illiquid and owed estate taxes. *See* Ralph's *Record* at 95. Our search of the records fails to show Kenneth made any attack on James' evaluation of the estates' debts. Because the issue was essentially conceded before the trial court, it cannot be raised on appeal. *Wisconsin National Life Insurance Co. v. Meixel* (1943), 221 Ind. 650, 654, 51 N.E.2d 78 (issue conceded at trial obviated the necessity of any finding on the subject, and error could not be predicated on appeal for an omission of the finding).

Even if we determined the court erred in not entering findings that the estates' debts exceeded the assets, we note that any omission was harmless. The supplemental record contains James' estimated expenses for the estates, which demonstrate they exceed the liquid assets. James filed a supplemental petition to sell stock in Amelia's estate totalling the estate's expenses at $44,793. *See Supp. Record* at 21. The estate assets consisted of real estate sold for $37,500 and the stock. James similarly presented evidence of the indebtedness of Ralph's estate. *See Supp. Record* at 29–32. Because the record clearly shows the estates did not have sufficient liquid assets to satisfy the debts, we are unpersuaded by Kenneth's claim of insufficient evidence of the estates' indebtedness.

was open. The briefs were filed one day late and thereby subject to dismissal pursuant to Ind. Appellate Rule 8.1. Nevertheless, we choose to address the appeal.

**3.** We note that neither party discussed this issue during the oral argument held on June 15, 1993 in Evansville. Presumably, James acknowledges the propriety of this appeal.

### Sale v. Stock Redemption

The parties next dispute the propriety of the court's orders to sell the stock. The parents' intent to make specific bequests of their stock to their sons was acknowledged in the trial court's findings. The conclusions of law correctly cited James' fiduciary duty to carry out the terms of the wills. *See Moore v. Livingston* (1970), 148 Ind. App. 275, 265 N.E.2d 251, 254. Findings nos. 15 and 17 merely note the option of a stock redemption instead of a sale.[4] 26 U.S.C. § 303 allows a corporation to redeem closely held stock to generate cash to avoid the sale of the stock in order to pay taxes and estate expenses. The court further concluded that a § 303 election is within the personal representative's discretion. The court then ordered the sale of the stock as James had requested. We find the conclusions of law to be conflicting under the circumstances and unsupported by the findings.

Both parents specifically bequeath the stock to their sons in equal shares. We observe, as did the trial court, Ralph and Amelia's obvious intent was for their sons to receive the stock to maintain ownership of the family corporation and to preserve Kenneth's controlling interest. Their intent is the governing factor in construing their wills as expressed by the language therein. *See Matter of Estate of Lane* (1989), Ind.App., 535 N.E.2d 186, 187. Kenneth contends James should be ordered to file § 303 elections to give effect to his parents' intent, which James' decisions and the court's orders to sell the stock defeat.

We agree the sales of the stock do not honor the testators' intent. The conditions of sale imposed by the court are such that either son may purchase all of the estates' stock. If both opt to buy the stock, the highest bidder prevails, and if neither son attempts to purchase the stock, a public sale ensues. None of the possible outcomes of the court's order of sale results with the sons possessing shares as the parents directed in their wills. Both

expert witnesses expressed opinions in favor of a § 303 redemption. It is undisputed that the corporation is willing to redeem the stock. A § 303 redemption appears to be the solution that more closely achieves the result Ralph and Amelia intended. Under § 303, the corporation redeems the amount of stock necessary to allow the estates to satisfy their obligations and any stock remaining in the estate will be divided equally between the sons as the parents wished. The proportion of share ownership between the sons will not be disturbed by this method. We find the trial court's conclusions of law ordering the sales conflict with its findings of the parents' specific bequests and its conclusion of law citing the fiduciary duty to carry out the terms of the wills. Therefore, we reverse and remand with instructions to the trial court to vacate its judicial sale orders and to order James to engage in § 303 redemptions with the corporation for each estate in order to satisfy the estates' obligations and effectuate the testators' intent.

### Value of Stock

We address the last issue disputing the value of the stock because it will be relevant to the redemption and for tax purposes. Kenneth attacks the court's finding no. 14 valuing the stock at $7,183.77 per share. Kenneth asserts the court should have applied discounts for lack of control and lack of marketability to determine the value of the stock. The trial court specifically relied upon the testimony of Robert W. Swan, CPA. Swan prepared a valuation report of the lumber company and explained the valuation process to the court. Swan testified that normally a discount for lack of marketability is applied. Because the valuation with the discount would be less than the value of the company dissolved, Swan shunned applying the discount. Amelia's *Record* at 198, 213; Ralph's *Record* at 174.

Kenneth points to several tax cases which applied the discounts to value

---

4. Under Indiana law, the personal representative has the power to convey estate property if the will grants such power. IND.CODE 29–1–15–2. Ralph and Amelia's wills gave James the power to "sell, convey, transfer and assign any and all personal property and any and all real estate necessary or proper to be sold, conveyed, transferred or assigned for the purpose of carrying out this Will." Ralph's *Record* at 8; Amelia's *Record* at 12.

closely held stock. *See Ward v. Commissioner* 87 T.C. 78 (1986); *Estate of W.G. Andrews v. Commissioner* 79 T.C. 938 (1982); *Estate of Berg v. Commissioner* 61 T.C.M. 1991–279 (1991); *Estate of Winkler v. Commissioner* 57 T.C.M. 1989–231 (1989); *Estate of Obering v. Commissioner* 48 T.C.M. 1984–407 (1984); *see also Estate of Bright v. U.S.* (5th Cir.1981), 658 F.2d 999. In these cases, the courts found it appropriate to apply such discounts based upon the facts and circumstances of each case. These cases show that the decision whether to discount the stock's value is fact-sensitive and do not support the assertion made during oral argument that application of the discounts is mandatory in valuing closely held stock. Kenneth also cites the opinion of CPA John Wright that the discounts should be computed. Kenneth is merely suggesting that we reweigh the evidence, which we will not do. *See Rittenhouse,* 575 N.E.2d at 666. Here, the trial court was persuaded by Swan's expert opinion. Swan's testimony supports the court's findings determining the stock's value. Kenneth has failed to show the findings are clearly erroneous. *See id.* at 665.

Reversed and remanded.

ROBERTSON and NAJAM, JJ., concur.