Kenneth E. KOCH, Appellant–Respondent,

v.

Betty M. JAMES, Personal Representative of the Estate of Amelia E. Koch, Deceased, Appellee–Petitioner.

No. 82A04–9601–CV–19.

Court of Appeals of Indiana.

Sept. 12, 1996.

---

Reed S. Schmitt, Scott M. Stratman, Frick Powell Whinrey Cravens & Schmitt, Evansville, for Appellant–Respondent.

Jack N. Vanstone, Evansville, for Appellee–Petitioner.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Kenneth E. Koch appeals from the trial court's decision to order fifteen shares of Center Heights Lumber Company stock to be redeemed in order to pay the expenses of the estate of Amelia E. Koch.

We affirm in part, reverse in part, and remand in part.

### ISSUES

1. Whether the trial court erred in ordering fifteen shares of stock to be redeemed.

2. Whether the attorney fees and personal representative fees are unreasonable.

### FACTS

Amelia E. Koch and Ralph J. Koch had two sons, Kenneth and Ralph E. The Kochs also had one daughter, Betty James. During their lifetimes, the Kochs owned and ran Center Heights Lumber Company. Kenneth has worked at Center Heights since the 1950's and owns 40 shares of stock in the company. Kenneth is also president of the company and sits on its board of directors. Kenneth's three children also work at Center Heights and own Center Heights stock. Two of the children hold company offices, and one of the children sits on the Center Heights board of directors.

Ralph E. left Center Heights in the late 1970's to begin his own trucking business. Although Ralph E. owns 24 shares of Center Heights, he does not hold an office with Center Heights, nor does he sit on its board of directors. The relationship between Kenneth and Ralph E. has been contentious for years. Betty's only involvement with Center Heights was to work there for approximately three weeks a number of years ago.

Amelia died on July 25, 1991, and Ralph J. followed her two weeks later. Ralph J. and Amelia's wills directed that the couple's shares of Center Heights stock, 135 and 57 shares respectively, be divided equally between Kenneth and Ralph E., and named Betty personal representative of both es-

tates. The Kochs' wills, which are identical, also provided:

> I direct that my funeral expenses and the expenses of my last illness and all my just debts be paid as soon after my death as may be found convenient.

> * * * * *

> In the event my [husband/wife] shall predecease me, then I give, devise, and bequeath to my daughter, Betty M. James, all of the rest and residue of my estate, including all personal property in my home, which I may own or have the right to dispose of at the time of my death.

(R. 21). Essentially, the Kochs' estates consisted of their shares in Center Heights, and the marital residence which Betty sold for $37,500.[1] Because of the illiquid nature of the estates, Betty petitioned the trial court to allow her to sell the Center Heights stock so as to pay the various fees and taxes associated with the estates. The trial court granted Betty's petition, finding with respect to Amelia's estate in pertinent part:

> 1. If there are sufficient assets in the residuary estate to pay expenses of administration, funeral expenses, federal estate taxes, and Indiana inheritance taxes, then the fifty-seven (57) common shares of Center Heights Lumber Company, Inc. need not be sold.

> 2. If there are not sufficient assets in the residuary estate to pay expenses of administration, funeral expenses, federal estate taxes and state inheritance taxes, then the Executrix is authorized to proceed with the sale of all fifty-seven (57) common shares of Center Heights Lumber Company, Inc.

(R. 29).[2]

Kenneth appealed the trial court's order to sell the stock arguing his parents' intent would be served by ordering a stock redemption, as opposed to a sale of the stock. While Kenneth's argument obviously did not persuade the trial court, this court did agree, holding:

we reverse and remand with instructions to the trial court to vacate its judicial sale orders and to order [Betty] to engage in § 303 redemptions with the corporation for each estate in order to satisfy the estates' obligations and effectuate the testators' intent.

*Koch v. James,* 616 N.E.2d 759, 762 (Ind.Ct. App.1993), *reh'g denied, trans. denied.*

Upon remand, Betty petitioned the trial court to order the redemption of fifteen shares of Amelia's Center Heights stock "for the purpose of paying taxes and expenses as follows:"

| | | |
|---|---|---:|
| 1. | Filing Fee, Court Costs, and Notices | $ 700.25 |
| 2. | Personal Representative's Fee | 18,000.00 |
| 3. | Attorney Fees | 29,040.00 |
| 4. | Federal Taxes | 29,271.35 |
| 5. | Indiana State Taxes | 20,031.44 |
| 6. | Accountant's Fees | 4,426.65 |
| 7. | Bank Statements & Fees | 180.15 |
| 8. | Postal, Federal Express, Long Distance | 49.08 |
| 9. | Medical | 781.08 |
| | TOTAL | $102,480.00 |

(R. 136). After the hearing held upon Betty's petition, Betty and Kenneth submitted proposed findings of fact and conclusions of law. Betty also submitted a memorandum in support of her petition to which was attached the "Preliminary Financial Report of the Estate of Amelia Koch." (R. 155). That document indicated interest and dividend income to Amelia's estate in the amount of $6,801.10 and net proceeds from the sale of the marital residence in the amount of $34,045.60. Furthermore, the exhibit evidenced Kenneth's contribution of $20,811.66 to be applied to the taxes.

The trial court granted Betty's petition to redeem fifteen shares of Center Heights stock finding "[t]he total taxes and expenses is One Hundred Two Thousand Five Hundred Twenty–One Dollars and Seventy–Three Cents ($102,521.73)," (R. 208), and concluding "[t]hat fifteen (15) shares of Center Heights Lumber Company stock should be redeemed at Seven Thousand One Hundred Eighty–Three Dollars and Seventy–Seven Cents ($7,183.77) per share for the purpose of paying taxes and expenses." (R. 209).

---

1. Kenneth, acting under a power of attorney, disclaimed Ralph J.'s interest in Amelia's estate. Thus, the Kochs' marital residence became a part of Amelia's estate.

2. The trial court entered a similar order with respect to Ralph J.'s estate.

## DECISION

### 1.

■ Kenneth challenges the above finding and conclusion, arguing the trial court should only have ordered redeemed those shares needed to satisfy Amelia's estate expenses after exhaustion of the residuary assets.

In response, Betty does not argue the merits of the issue. Rather, she counters:

The sons, Kenneth Koch and Ralph Koch, by virtue of [Amelia's] will inherit the shares of stock and Betty James, daughter, inherits the remainder, which is real estate.[3]

* * * * *

The real issue then is whether Betty James' entire remainder interest, and thus her entire inheritance, is to be used to pay the expenses of the estate. Normally this is the case. However, the expenses of this estate were greatly increased by the litigation initiated by Kenneth Koch. The original court order was appealed and the Court of Appeals reversed and remanded with the following instruction:

Therefore, we reverse and remand with instructions to the trial court to vacate its judicial sales orders and to order [Betty] to engage in § 303 redemptions with the corporation for each estate in order to satisfy the estates' obligations and effectuate the testators' intent. *Koch v. James,* 616 N.E.2d 759, 763 (Ind.App. 1 Dist.1993).

It is [Betty's] contention that, by virtue of this language, her interest in the remainder should not be used to pay expenses ... and the Petition to [Redeem] Stock should be granted to pay the remaining expenses of administration.

Should Betty James' remainder interest be exhausted to pay the expenses, she will not receive any inheritance,[4] which was not the intent of the decedent.

Brief of Appellee at 6–7.

We cannot agree with Betty's contention that the above-quoted passage from *Koch* indicates that "her interest in the remainder should not be used to pay expenses." Neither Kenneth nor Betty appealed that portion of the trial court's order to sell the Center Heights stock which, as noted above, concluded:

1. If there are sufficient assets in the residuary estate to pay expenses of administration, funeral expense, federal estate taxes, and Indiana inheritance taxes, then the fifty-seven (57) common shares of Center Heights Lumber Company, Inc. need not be sold.

(R. 29). Thus, this court was not asked to decide whether the residual assets of Amelia's estate should be applied to the estate's debts before the sale or redemption of Center Heights stock. Rather, the above-quoted passage from *Koch* merely concludes that portion of our opinion wherein we consider whether the trial court erred in ordering that the stock be sold, as opposed to redeemed. When this court referred to "the testators' intent," it was merely referencing Ralph J. and Amelia's "obvious intent ... for their sons to receive the stock to maintain ownership of the family corporation and to preserve Kenneth's controlling interest." *Koch* at 762. This court was not referencing Ralph J. and Amelia's intent with respect to Betty's inheritance, and our review of the record indicates Amelia's intent with respect to Betty's inheritance has never been an issue.

■ In any case, in light of the fact that the trial court's construction of Amelia's will as it relates to Amelia's intent with respect to Betty has never been questioned and given the fact that in Indiana, specific bequests generally are to be abated only after the residuary bequests have been exhausted, *Matter of Estate of Routh,* 524 N.E.2d 46, 47 (Ind.Ct.App.1988), we find the trial court

---

3. Aside from the marital residence, the residuary assets also include, but are not limited to, dividend and interest income.

4. Betty's conclusion that she will receive no inheritance if the residuary is applied to the estate expenses is not entirely true as Betty is the beneficiary of several substantial non-probate assets.

erred in ordering fifteen shares of Center Heights stock to be redeemed to pay the expenses of the estate without first exhausting the residuary assets. Accordingly, we reverse the trial court's order directing that fifteen shares of stock be redeemed, and remand with instructions to redeem only those shares needed to satisfy the estate expenses after exhaustion of the residuary assets.

### 2.

The trial court found that "Twenty–Nine Thousand and Forty Dollars ($29,040.00) is a reasonable fee for the attorney for the estate," and that "Nineteen Thousand Dollars ($19,000.00) is a reasonable fee for the personal representative services in this estate." (R. 207). Kenneth next argues the trial court's award of $29,040.00 in attorney fees and $19,000.00 in personal representative fees is erroneous. Essentially, he argues both fees are unreasonable in that they exceed the Superior Court of Vanderburgh County, Probate Division fee guidelines.

When the trial court has made special findings, this court on appeal applies a two-tiered standard of review. First, we must determine whether the evidence supports the findings. Then we must determine whether the findings support the judgment. If the special findings support the judgment and are not clearly erroneous, the judgment will be affirmed. We will consider only the evidence in the record which supports the judgment, along with the reasonable inferences to be drawn from the evidence. *McCorry v. G. Cowser Const., Inc.,* 636 N.E.2d 1273, 1276 (Ind.Ct.App.1994).

With respect to the attorney fees, Edward Johnson, a licensed attorney practicing in Vanderburgh County, testified at the hearing on Betty's petition to redeem the stock that he is "familiar with fees charged by attorneys in estates in Vanderburgh County," (R. 215), and, after reviewing the "ledger card" in Amelia's estate, concluded that he believed the attorney fees to be "quite reasonable." (R. 216). Thus, the evidence supports the trial court's finding that $29,040.00 in attorney fees for this estate is reasonable, and despite Kenneth's lengthy argument as to why various of the charges is unreasonable, we must decline his invitation to reweigh the evidence in his favor.

As to the personal representative fees, Kenneth first claims the trial court erred in awarding Betty $19,000.00 because she only requested $18,000.00. We agree. Our review of the record indicates that Betty petitioned the trial court for $18,000.00 in fees and that $18,000.00 was the amount requested and discussed at the hearing.

Furthermore, while we agree with Kenneth that the trial court erred in awarding $19,000.00, we do not agree with his contention there is no evidence to support an $18,000.00 award. While Betty did not testify as to her time, her attorney recited Betty's various estate-related activities without objection and testified to the fact that the regular judge of the probate court[5] allows personal representatives to charge half the amount per hour charged by the attorney or sixty dollars per hour in this case. Betty's attorney also testified regarding how the hate between Kenneth and Ralph E. has caused a protracted proceeding thus increasing the amount of time Betty has spent on estate matters. Furthermore, the trial court admitted to being aware of the amount of litigation involved in this case. (R. 282). Thus, while not precise, we cannot say an $18,000.00 award is unsupported by the evidence and, again, we must decline Kenneth's invitation to reweigh the evidence. Nevertheless, we reverse the trial court's entry of a $19,000.00 award to Betty for personal representative fees and remand for entry of an award of $18,000.00.

Affirmed in part, reversed in part, and remanded in part.

RILEY and KIRSCH, JJ., concur.

---

5. The regular judge presided over this case through the appeal of Betty's original petition to sell the Center Heights stock. A special judge now presides over the case.